515 A.2d 527

**Shirley SMITH, Appellee,**

v.

**Cloyd J. SHAFFER, Appellant.**

Supreme Court of Pennsylvania.

Argued June 4, 1986.

Decided Sept. 25, 1986.

422

Daniel K. Deardorff, Carlisle, for appellant.

Michael R. Rundle, Carlisle, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

We granted this petition for allowance of appeal from an order of the Superior Court, 341 Pa.Super. 627, 491 A.2d 926, affirming the lower court's grant of a new trial. The issue at trial was whether Cloyd Shaffer, appellant, was the biological father of an infant born to appellee, Shirley Smith.

A jury trial was held in the Court of Common Pleas of Cumberland County. At trial, appellee testified that she had had sex only with appellant during the possible conception period. Appellee's expert witness, a hemotologist, testified that blood tests conducted on appellant, appellee, and the infant included both red and white cell Human Leucocyte Antigen (HLA) bloodgrouping tests and that those blood tests established, in his opinion, a 99.99 percent probability that appellant was the biological father. His expert opinion was based upon the premise that blood types are inheritable according to genetic principles and the generally accepted reliability of HLA tests.

Appellant denied ever having had sex with appellee. Appellant also called as a witness Ed Smith, appellee's brother, (who is also appellant's stepbrother) who testified that he saw appellee's stepfather (Ed Smith's biological father) sexually fondle appellee during the possible conception period. Ed Smith also testified that he was present when appellee's mother took appellee and appellee's sisters to truck stops, where the girls would leave Ed Smith in the car and go to various trucks and return with money. The purpose of this testimony was to raise an inference that, contrary to appellee's assertions, she had engaged in sexual activity with persons other than appellant during the conception period.

The jury rendered a verdict in favor of appellant. The Court of Common Pleas, sitting en banc, granted appellee's post-trial motion for a new trial on two grounds. First, the court held that the verdict was against the weight of the evidence, stating:

"While we may not grant a new trial merely because there is a conflict in the evidence and we would have arrived at a different conclusion than the jury, in light of the strong scientific evidence supporting the [appellee's] claim and the lack of credible testimony to the contrary, the award of a new trial is imperative."

Opinion of the Court of Common Pleas of Cumberland County, slip op. at 3.

Second, the court en banc found that the trial judge's answer to a question raised by the jury during its deliberations had prejudiced appellee. "In support of a grant of a new trial, it is our feeling that the jury was prejudicially misled by the judge's answer to a question submitted by the jury during their deliberation." *Id.* at 3. The jury's question and the judge's answer were as follows:

"What is the possibility if this stepfather and stepbrother were tested of their coming out 99.99 per cent?"

BY THE COURT:

"The answer is I can't answer that question. I don't think the doctor could answer it. What he gave you was the probability of the [appellant] being the father is [sic] 99.99. And I would give you the benefit of my opinion that if this is the possibility for this [appellant] then nobody else could have that possibility."

*Id.* at 3–4.

In affirming the court en banc, the Superior Court, in a brief memorandum opinion without citation of authority, addressed only the court's determination that the verdict was against the weight of the evidence. We now reverse.

An appellate court "will not reverse a court's exercise of discretion in granting or refusing to grant a new trial ... unless there has been a clear abuse of that discretion."

*Quinn v. Kumar,* 437 Pa. 268, 275, 263 A.2d 458, 462 (1970).

> "To determine whether a trial court's decision to grant a new trial constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not, however as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so doing plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury."

*Thompson v. City of Philadelphia,* 507 Pa. 592, 600, 493 A.2d 669, 673 (1985).

■ In the instant case, it is apparent that the court en banc "invaded the exclusive domain of the jury," and "exceeded the limits of judicial discretion." The testimony presented by the parties and the witnesses for appellant and appellee was in direct conflict. Appellee's claim of paternity was supported by her testimony and the opinion of her expert witness. Appellee's denial of paternity was supported by his testimony and the testimony of his witness, Ed Smith. "The determination of credibility is solely for the trier of fact." *Adoption of S.H.,* 476 Pa. 608, 615, 383 A.2d 529, 532 (1978). The jury in the instant case, by rendering a verdict for appellant, obviously resolved the credibility of the witnesses and the conflict in testimony in favor of appellant, as was its prerogative. The conclusion of the court en banc, i.e., that the verdict was against the weight of the evidence, was based on *its* reassessment of the credibility of the witnesses, a matter exclusively within the province of the jury.

The court en banc's reassessment of credibility was obviously influenced by the weight it placed upon the opinion of appellee's expert witness (99.99% probability that appellant was the father), since that court found the award of a new trial was imperative "in light of the strong scientific evidence supporting the [appellee's] claim and the lack of credible testimony to the contrary...." Lower court slip

op. at 3.[1]  It was improper for the court to elevate the opinion of the expert witness to such lofty heights in light of the jury's finding that appellant's and his witness' testimony were credible.  As this Court stated in *Tinicum Real Estate Holding Co. v. Commonwealth Department of Transportation*, 480 Pa. 220, 232, 389 A.2d 1034, 1040 (1978), "in determining the facts the jury has the right to believe all, some of, or none of the experts' testimony. Furthermore, it was the jury's duty to consider all of the facts and circumstances established by the trial evidence . . . ."

■  The Superior Court has had prior occasions to consider the reliability and probative value of HLA tests, and has held them to be admissible in a paternity action not only to disprove paternity[2] but as affirmative evidence to prove paternity.  *See e.g., Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983); *Miller v. Kriner*, 341 Pa.Super. 293, 491 A.2d 270 (1985); *Connell v. Connell*, 329 Pa.Super. 1, 477 A.2d 872 (1984).  However, the Superior Court has held that, in line with the general rule in this Commonwealth that expert opinion testimony is not conclusive and must be considered in conjunction with all of the evidence introduced at trial, HLA tests are not conclusive of paternity.  *Connell v. Connell, supra*, 329 Pa.Super. at 477 A.2d 874–75.  In *Turek v. Hardy, supra*, that court stated: "We emphasize, however that our holding is limited to the conclusion that HLA blood test results may be introduced as some evidence of paternity.  We do not hold that this evidence is conclusive."  312 Pa.Super. 158, 458 A.2d at 565.  We approve of

1.  The court en banc also observed:
    While the [appellant] denied ever having had intercourse with the [appellee], results of hematological tests performed on the child, the [appellee] and the [appellant] indicated that the actual probability that the [appellant] is the male parent of the child, . . . is 99.99% . . . . [The expert witness's] testimony clearly indicates that it is highly likely that the [appellant] is the male parent."
    Slip op. at 2.

2.  As provided by the Uniform Act on Blood Tests To Determine Paternity, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. §§ 6131–6137.

the Superior Court's determinations that HLA blood tests are not conclusive evidence of paternity.

Although the court en banc was aware of *Turek* and of the Superior Court's holding that HLA blood test results were not conclusive, lower court slip op. at 3, it is clear from its opinion in support of its grant of a new trial that it merely paid lip service to *Turek* and ignored its dictates. This was error. The Superior Court perpetuated this error by affirming the court en banc in its brief memorandum opinion which fails to mention *Turek* or *Connell.*

We hold, therefore, that the court en banc abused its discretion and invaded the exclusive province of the jury in this case in determining that the jury's verdict in favor of appellant was against the weight of the evidence, and that Superior Court erred in affirming the court en banc.

■ Appellee asserts, in support of the grant of a new trial, that the court en banc was correct in holding that "it is our feeling that the jury was prejudicially misled by the judge's answer to a question submitted by the jury" regarding "the possibility if this stepfather and stepbrother were tested of their coming out 99.99 per cent?" *See* slip op. *supra* at 3. It is difficult to imagine how the trial judge's answer to this question could have prejudiced appellee since that answer suggested that *only appellant* could have that 99.99% probability. Regardless however, appellee has waived this issue for failure to object or take exception to the judge's answer when given and for failure to include the issue as grounds for new trial in her post-trial motions. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981); Pa.R.Civ.P. Rule 227.1. The court en banc improperly considered this issue, therefore, in granting appellee a new trial.

For the foregoing reasons:

The order of the Superior Court affirming the order of the Court of Common Pleas of Cumberland County grant-

ing appellee a new trial is reversed, and the jury verdict in favor of appellant is reinstated.

HUTCHINSON, J., filed a dissenting opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the order of the Superior Court affirming the order of the Court of Common Pleas of Cumberland County granting appellee a new trial is reversed, and the jury verdict in favor of appellant is reinstated.

HUTCHINSON, Justice, dissenting.

I dissent. When considering a motion for a new trial, a trial judge, of course, should not merely substitute his judgment for the jury's. We have stated that:

A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970). Nevertheless, the decision to grant or deny a motion for a new trial is within the trial court's discretion. *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123 (1969). Indeed, we have held that it is the duty of the trial court which heard the witnesses to grant a motion for new trial if it believes the jury's verdict is capricious or against the weight of the evidence. *Burchard v. Seber*, 417 Pa. 431, 207 A.2d 896 (1965).

The HLA test is well respected and authoritative. One commentator has called it "too probative to be ignored."[1] In holding such tests admissible, but not conclusive, Superior Court discussed the test's reliability. It noted that such tests have other common applications such as matching

1. McCormick on Evidence 621 (E. Cleary, 3d ed. 1984).

organ donors and recipients. *Turek v. Hardy,* 312 Pa.Superior Ct. 158, 458 A.2d 562 (1983). It is thus apparent that the medical profession relies on it in matters of life or death. Yet the majority holds a trial judge abuses his discretion if he grants a new trial because a jury ignored it.

The expert witness who presented the test results was qualified and his testimony is persuasive, if not conclusive. The trial judge had an opportunity to see and hear the witnesses. We lack this advantage. Given the strength of the expert's testimony and the less objectively reliable testimony of the other witnesses, I would defer to Common Pleas' judgment. I believe our trial judges in general and this one in particular exercise their duty in regard to new trial motions responsibly and conscientiously.

Thus, I would affirm Superior Court.