Connie L. WATTERS Appellant,

v.

Donald R. WATTERS Appellee.

Superior Court of Pennsylvania.

Argued June 29, 2000.
Filed Aug. 7, 2000.

Norman A. Levine, New Castle, for appellant.

Gabriel P. Cilli, New Castle, for appellee.

Before JOYCE, ORIE MELVIN and MONTEMURO *, JJ.

---

* Retired Justice assigned to Superior Court.

MONTEMURO, J.:

¶ 1 This is an appeal from an order transferring primary custody of the parties' son from Appellant to Appellee.

¶ 2 The parties to this action were married in March of 1985, and their children, Brittany and Donald III, were born in 1986 and 1989 respectively. In February of 1999, the parties separated when Appellee moved out of the upper floor of the marital residence and installed himself in the basement. From that point, the schism between the parents repeated itself in the children. Brittany, already somewhat distant from Appellee, became openly hostile to him, while Donald III blamed Appellant for the problems in the marriage, and began to spend all of his time in the basement with Appellee.

¶ 3 In April of 1999, Appellee left the marital residence under order of court, and began residing nearby with his parents where he has remained. A temporary custody order entered in May of 1999 awarded primary custody of both children to Appellant with liberal partial custody in Appellee. Since that point, Brittany has become completely estranged from Appellee, refusing even to speak to him, and the antagonism displayed by Donald III to Appellant has continued largely unabated. The court-appointed psychologist who interviewed both parties and the children several times in preparation for the hearing on Appellee's petition to modify the original custody order, concluded that these attitudes are encouraged by the parties, whose manipulation of the children has served to solidify Brittany's resentment and Donald III's intransigence.

¶ 4 After two days of hearings, the trial court entered the instant order, awarding primary custody of Donald III to Appellee with substantial partial custody to Appellant, and custody of Brittany to Appellant. This appeal followed, alleging as an abuse of discretion only the latter portion of the order.

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992) (citations omitted).

It is the paramount concern of the reviewing court, as it should be for the trial court, to insure that the best interests of the child are served by whatever decision is reached. *Id.*

¶ 5 The trial court, relying heavily on the recommendations of the courtappointed psychologist, determined that Donald III's best interests lay with awarding his custody to Appellee because otherwise "the probability of behavioral and emotional problems would increase." (Trial Ct. Op. at 6). The court goes on to say that although Appellant has testified to a noticeable improvement in the boy's behavior toward her since Appellee has left the marital residence, Donald III "continues to desire to please his father." (*Id.*) While the court correctly notes that weight of evidence and credibility of witnesses is a matter for its discretion, and that it may consider uncontradicted expert testimony, *Murphey v. Hatala*, 350 Pa.Super. 433, 504 A.2d 917 (1986), our Supreme Court has observed, albeit in an entirely different context, the general rule with regard to expert opinion in the Commonwealth: it is

not conclusive and is to be considered only in conjunction with all the other evidence presented. *Smith v. Shaffer*, 511 Pa. 421, 426, 515 A.2d 527, 529 (1986). In this instance, however, we find no abuse of discretion in the conclusions drawn by the court from the evidence before it, including that provided by the expert.

¶ 6 The trial court's rationale for the award is its disinclination to place blame for "causing or promoting conflict between the parties and the children," but rather to "deal with circumstances as they exist." (Trial Ct. Op. at 10). The court, in fact, observes that Appellant has "no specific shortcomings that would necessitate a change in custody, and it appears . . . that Mother has been dedicated to the children and is an exemplary homemaker." (*Id.* at 10). It is, however, the court's burden in custody matters to extrapolate from existing conditions a schedule of custody and visitation which serves the child's best interests. Where, as here, the child's mental state is threatened by his current custody situation, and his stability is largely dependent upon the presence of one parent rather than the other, the child belongs where his emotional equilibrium may be maintained if not actually improved. Indeed, Donald III testified that were he to be placed in Appellee's primary custody, it would be, "just the happiest thing of my life." (N.T., 9/30/99, at 102).

¶ 7 Although a child's wishes are important, they are not controlling in custody matters, and the child's preference, to be given credence, must be based on reasons which comport with his best interests, whether or not he is able to identify them as such. *McMillen, supra.* Donald III gave as his reasons the various activities he shares with Appellee, particularly sports and outdoor pursuits, his improved performance on tests resulting from Appellee's superior assistance with school work, and his affection for his paternal grandparents. Donald III's encomium on Appellee's virtues, his continual expression of love for and admiration of Appellee, was in stark contradistinction to the tremendous animosity and hatred the boy expressed toward Appellant, and reflects the quality of his relationship with her, that is, predominantly negative; Donald III views her as, at best, uninterested in him or his concerns to the point of neglect, and entirely culpable in the dissolution of the marriage. Given this state of the child's feelings, which informs his conduct, Appellant cannot offer the prospect of any actual advantage to Donald III to be gained from his continuing in her primary care. Nor can she assure that the deterioration in the boy's behavior and emotional state which the court sought to avoid by means of the revised custody arrangement would not occur. Even if Donald III's behavior toward Appellant has improved, his feelings about her, as freely expressed both to others and to Appellant herself, have not. The child's best interests will not be served by requiring that he remain primarily in the company of a person whom he professes to loathe, and whom he believes, whether or not accurately, to care little for him, and to be solely responsible for the family's dissolution. The court, faced with the demonstrable benefits Donald III derives from his relationship with Appellee and the opportunity provided by that environment for Donald III to flourish, correctly concluded that it would be "more harmful" to force the child to remain in Appellant's primary care.

¶ 8 Appellant also directs us to the policy of this Commonwealth that, where possible, siblings should be raised together absent "compelling reasons" to do otherwise. *Pilon v. Pilon*, 342 Pa.Super. 52, 492 A.2d 59, 60 (1985). In examining the meaning of the term compelling reasons, this Court asked a question pertinent here, that is, "did the evidence indicate that it was 'necessary' to separate the children, was the evidence 'forceful' in this regard, or was it, in other words, 'compelling.'" *Id.* However, this policy is a consideration in rather than a determinant of custody arrangements, *Wiskoski v. Wiskoski*, 427

Pa.Super. 531, 629 A.2d 996 (1993), and we find that the reasons advanced for the separation here are indeed compelling.

¶ 9 In discussing Donald III's relationship with his sister, the court concludes that despite their fondness for each other they are not extremely close, but between a liberal partial custody schedule and proximity at school they will have opportunities to continue the relationship. In fact, there are substantial possibilities inherent in the contact provided by partial custody for amendment of Donald III's current attitude toward Appellant. Further, we reiterate that his remaining in Appellant's care while he harbors such intensely negative feelings for her is not conducive to his well-being. If, however, Donald III is permitted the custody situation he desires, his contentment there may to some extent ameliorate his antipathy to Appellant; concomitantly, his relationship to his sister, distant rather than negative, may also benefit. Thus we find the reasons to separate the children compelling, while the rationale for keeping them together is less than persuasive.

¶ 10 This is, as the trial court correctly observes, a tragic situation. Out of the conflict in this family, the court has fashioned a situation for Donald III which allows him the best chance for happy and productive development. We find no error in the court's decision.

¶ 11 Having said so much, however, we are compelled to express concern lest our affirmation of the trial court's order be seen as condonation or tacit approval of Appellee's part in the formulation of Donald III's attitude. Rather, we deplore the fact that parental authority, particularly where, as here, Donald III's affection for Appellee amounts to hero worship, is used for such destructive and pernicious ends. The trial court, although struggling to remain aloof from allocation of blame, conceded the possibility that Donald III might well have been "heavily influenced" by Appellee and his parents. The court's order contains a provision directing the parties

to participate in counseling, clearly to address behavioral issues for the adults as well as for the children involved in this unhappy situation. We strongly approve the entry of this directive.

¶ 12 Order affirmed.

¶ 13 Dissenting Opinion by ORIE MELVIN, J.

ORIE MELVIN, J., dissenting.

¶ 1 I disagree with the Majority's decision to affirm the custody Order which transfers primary physical custody of eleven-year-old Donald III to the Appellee. This divided custody arrangement not only separates Donald III from the Appellant who has proved to be an able primary caretaker, but from his only sibling. I believe the trial court abused its discretion by not fully considering these two factors in determining what was in this child's best interests. Accordingly, I dissent.

¶ 2 "The role of the primary caretaker is a substantial factor which the trial judge must weigh in adjudicating a custody matter where the child is of tender years." *R.A.R. v. T.M.*, 434 Pa.Super. 592, 644 A.2d 767, 769 (1994). Here, the Appellant was the primary caretaker of the children. After their daughter was born, the parties decided the Appellant would resign from her employment, become a stay-at-home mother and be responsible for all of the children's day to day needs. There is no dispute in the record the Appellant was a capable and able parent. Although the Majority acknowledges the Appellant has no specific shortcomings which would necessitate a change in custody, they find the current custody situation threatens the child's mental state and stability. Majority Opinion at 969. I disagree.

¶ 3 Based upon my review of the custody proceedings in this case it is evident the child's insolent behavior towards the Appellant did not begin until the parties separated, and the Appellee became more involved in his son's life. Moreover, it appears the child was simply mimicking the

Appellee's insulting behavior towards the Appellant in an attempt to gain his favor. *See* Trial Court Opinion at 3. I find the decision to alter the existing custody arrangement only rewards the child for his contemptuous conduct and further divides the relationship between a dedicated mother and her son.[1]

¶ 4 Furthermore, the Order in question will effectively result in the separation of Donald III and his fourteen-year-old sister Brittany. Absent compelling reasons to the contrary, it is the policy of this Commonwealth that siblings should be raised together whenever possible. *Hockenberry v. Thompson*, 428 Pa.Super. 403, 631 A.2d 204, 205 (1993). In order to meet this standard, the evidence must indicate it was necessary to separate the children and the evidence was forceful in this regard. *Cyran v. Cyran*, 389 Pa.Super. 128, 566 A.2d 878, 880 (1989). Absent these compelling reasons, the children should be raised together in one household which permits the continuity and stability necessary for a young child's development. *Pilon v. Pilon*, 342 Pa.Super. 52, 492 A.2d 59, 60 (1985).

¶ 5 The Majority finds the reasons to separate the siblings are compelling. Again, the Majority focuses on the child's ill feelings and negative attitude toward the Appellant. However, they give little weight to the importance of the brother-sister relationship which I find is critical to a child's development and sense of family. In the instant case, the children have always been raised together. Although they may have different interests because of their age and gender, the record from the custody proceedings reveals they play well together and are fond of one another.

¶ 6 Contrary to the Majority, I do not agree the "partial custody schedule or the children's proximity at school" will permit them to have a fulfilling relationship as brother and sister. Majority Opinion at 970. The custody schedule espoused by the trial court does not foster the sibling bond. Pursuant to the schedule, visitation is divided between the out-of-custody parent. Presumably, this would allow the children to be together each weekend. However, aware of the estranged relationship between the Appellee and Brittany, the trial court did not order her to participate in the weekend partial custody arrangements. Therefore, the siblings will only be together during those times Donald III is required to visit with the Appellant. Furthermore, upon implementation of this new custody arrangement the children will remain in the Shenango school district; however, due to their grade-level, they will attend different schools. Therefore, I am unable to discern how they will have the opportunity to continue their relationship during school hours.

¶ 7 To benefit from the brother-sister relationship and maintain a long-lasting emotional bond, the children need to spend sufficient time together and experience the continuity of living as a family unit rather than as a house divided. The Majority discounts the value of the relationship between siblings here. But for the separation and ultimate divorce of the parties, these children would be raised together. A further division of the family by separating these children will deny them any opportunity to develop and enjoy a unique and enduring relationship with their sibling. The evidence in this case was not forceful nor did it impact a necessity to separate this brother from this sister. Because I find no compelling reason to separate these siblings, I dissent.

---

1. I recognize the Appellant has attempted to remedy these problems with her son by attending family counseling sessions.