**John F. JACKSON, Appellant,**

v.

**Donna M. BECK, Appellee.**

Superior Court of Pennsylvania.

Argued April 22, 2004.

Filed Sept. 14, 2004.

John F. Jackson, appellant, pro se.

Vito F. Canuso, Jr., Philadelphia, for appellee.

Before: JOYCE, BOWES and JOHNSON, JJ.

OPINION BY BOWES, J.:

¶ 1 John F. Jackson ("Father") appeals *pro se* from the September 9, 2003 order of the Court of Common Pleas of Philadelphia County that denied Father's request to modify the existing custody order which was entered on May 10, 2002, pursuant to agreement of the parties. For the following reasons, we affirm.

¶ 2 Father and Donna M. Beck ("Mother") married in 1999, and their daughter, Abigail, was born on March 14, 2000. The parties divorced on August 23, 2000. On May 10, 2002, pursuant to the parties' agreement, the Court of Common Pleas of Philadelphia County entered an *order* awarding physical custody between Mother and Father on a sixty-forty percent basis, respectively. Mother had primary physical custody, and Father had partial physical custody every other weekend beginning Friday at 3:00 p.m. until Monday at 9:00 a.m. Father also had partial physical custody every Tuesday from 3:00 p.m. to 9:00 a.m. Holidays and vacation periods alternated according to a schedule. The parties shared legal custody of the child.

¶ 3 On July 1, 2002, Father filed a petition to modify custody, which appeared to be *pro se,* and a counseled petition in October, 2002,[1] in which he sought joint

---

1. The exact date in October is not known because the petition in the record lacks the Prothonotary's time stamp. The trial court indicates the filing date was October 23, 2002. Trial Court Opinion, 12/10/03, at 2.

physical custody, seeking an exact fifty-fifty percent allotment. Following a hearing on September 9, 2003, the trial court denied Father's petition and concluded that the present custody order continued to serve Abigail's best interest. Trial Court Opinion, 12/10/03, at 5.

¶ 4 On appeal, Father alleges an abuse of discretion by the trial court for failing to award him exact equal custody in light of Mother's purported pattern of alienation of his relationship with Abigail and Mother's alleged non-compliance with court orders. He further contends that the trial court relied upon and erroneously interpreted the recommendation of the psychologist and did not consider Abigail's best interest by ensuring her "right to two parents in all aspects of her life." Father's brief at i-ii.

¶ 5 Our scope and standard of review is settled:

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. *Watters v. Watters*, 757 A.2d 966, 967 (Pa.Super.2000). However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. *Id.* Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus represent a gross abuse of discretion. *Id.*

*Luminella v. Marcocci*, 814 A.2d 711 (Pa.Super.2002). In any custody determination, the paramount consideration is the best interest of the child. *Myers v. DiDomenico*, 441 Pa.Super. 341, 657 A.2d 956 (1995); *Moore v. Moore*, 535 Pa. 18, 634 A.2d 163 (1993). As with initial custody determinations, appellate review of modification orders is broad. In order to permit proper review on appeal, the trial court must conduct a searching inquiry into all facts and circumstances affecting the child's best interests and welfare. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984). For the reasons that follow, we conclude that the trial court properly declined to modify custody.

¶ 6 It is axiomatic that the potential harm that may result from the disruption of established patterns of care and emotional bonds underscores the need for continuity, stability, and finality imparted to custody arrangements. A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement. Thus, we repeatedly have emphasized that a party requesting modification must prove that the alteration of an existing custody arrangement is in the child's best interest. *Myers, supra; McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992).

¶ 7 Father sought to modify the present custody order in order to obtain "joint physical custody on an equal basis." N.T., 9/9/03, at 8. Specifically, Father wants to modify the existing order in a manner which would award Father custody pursuant to exact mathematical precision. Meanwhile, "it goes without saying that shared custody does not require equal physical custody." *DeNillo v. DeNillo*, 369 Pa.Super. 363, 535 A.2d 200, 203 n. 3 (1987) (emphasis added). Such shared custody merely requires shared decision-making for the child. *Ellingsen v. Magsa-*

*men,* 337 Pa.Super. 14, 486 A.2d 456 (1984); *cf. Fisher v. Fisher,* 370 Pa.Super. 87, 535 A.2d 1163 (1988) (trial court's conclusion that physical custody be equally shared was abuse of discretion; shared custody need not encompass shared physical custody, but only shared legal custody).

¶ 8 The "best interests" standard, employed on a case-by-case basis, compels consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. *Sawko v. Sawko,* 425 Pa.Super. 450, 625 A.2d 692 (1993). Upon our review of the record, we agree with the trial court's conclusion that Father failed to demonstrate that altering the existing schedule was in the best interest of Abigail so as to warrant a modification of the existing custody order. Rather, the evidence reveals that the modifications were designed to serve Father's own interests and motivations, not those of his child. *See DeNillo, supra.*

¶ 9 Father alleges as grounds for modification, *inter alia,* that the May 10, 2002 order prevents him from being an active participant in Abigail's education. This claim is absurd. As the trial court aptly noted, Abigail is only three and one-half years-old. Since her age precludes her from even being enrolled in school, it is not possible for Father to be excluded from her school life and activities. As to the specifics of the claim, Father testified, "Well, Your Honor, I can't take her to school now if I don't have her during the week. I can't be involved with school." N.T., 9/9/03, at 15. However, pursuant to the custody order, Father has partial custody of Abigail every Tuesday afternoon through Wednesday morning, providing him with the opportunity to be involved during school hours when his daughter does, in fact, begin attending school. *Id.*

¶ 10 Nor do we find any merit to Father's contention that the trial court failed to consider or accord proper weight to his claim that he has repeatedly been denied a gender-neutral decision. As the trial court stated in its opinion, prior decisions regarding Father's custody hearings have been rendered by "such Judges as The Honorable Edward Rosenberg, Honorable Edward R. Summers, Honorable James Murray Lynn, Honorable Margaret T. Murphy McKeown, the Honorable Shelly Robins–New, and the Honorable Esther Sylvester." Trial Court Opinion, 12/10/03, at 4. Adverse decisions alone do not indicate bias. *Arnold v. Arnold,* 847 A.2d 674 (Pa.Super.2004).

¶ 11 Finally, we have considered and rejected Father's remaining contentions which can be analyzed under his pervasive theme alleging a pattern of alienation and interference by Mother. Our review of the record reveals there was conflicting testimony on these matters. The trial court heard testimony from both parties with respect to Father's allegations concerning church attendance, vacation time, and visitation. Father alleged Mother sought to ban him from Abigail's church activities and was "not being cooperative or compliant" with aspects of the custody order. N.T., 9/9/03, at 16. Mother testified conversely that she played no part in the decision of the church elders regarding their relationship with Father, and furthermore, that decision predated the May 10, 2002 custody order. N.T., 9/9/03, at 25. As to vacation time, each party was awarded six weeks of vacation; Father took his six weeks first, followed by Mother's six weeks. Father complained that Mother's six weeks continued past Labor Day, and by definition, "summer ended at Labor Day." *Id.* at 20. Thus, Father was accusing Mother of violating the May 10, 2002 order regarding vacation time because he did not believe "summer vacation" could

occur past Labor Day. Clearly, Father's demands regarding the parties' compliance with the custody order are obstructive and controlling, the very behavior of which he accuses Mother.

¶ 12 The trial court resolved the conflicting evidence in Mother's favor, and we defer to that decision. We consistently have held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives on the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record. Accordingly, the fact-finder is free to believe all, part, or none of the evidence, and this court will not disturb the trial court's credibility determinations. *B.S. v. T.M.*, 782 A.2d 1031 (Pa.Super.2001).

¶ 13 The trial court herein carefully considered Father's "demeanor, credibility and testimony" and determined that the modifications sought were "not even designed to further the child's best interest but only so Father, as a matter of self-interest, can exact a precisely even amount of custody." Trial Court Opinion, 12/10/03, at 5. Moreover, we note that the concept of shared custody is not so narrowly defined as to require a precise division of parenting time as Father asserts. Formulaic solutions such as the one proposed by Father in child custody matters are problematic due to the unique character of each proceeding, the subjective nature of the evaluations, and the decisions that must be made. Herein, contrary to Father's assertions, the trial court carefully considered the positions of both parents as well as the recommendation of the court psychologist that the custody arrangement remain unchanged. Mr. Thomas Kenny,

the psychologist who performed the mental health assessments of the parties, characterized Father as a "highly detailed and somewhat controlling man." Psychological report, 2/4/03, at 2. Mr. Kenny suggested that the evaluation revealed Father is "a somewhat self-centered and at times overly demanding individual who can present as being overly guarded." *Id.* at 3. Additionally, the psychologist indicated that Father behaved "in an oppositional fashion," was "somewhat rigid" under stress, and may be "pseudo cooperative." *Id.* Testing revealed that Mother, too, was "controlling and manipulative, the information that she provided tended to be self-serving . . . and under stress, she tends to be rigid and impulsive." *Id.* at 5–6. The psychologist recommended continuation of the order in effect.

¶ 14 The testimony adduced at the hearing reveals that the schedule changes proposed by Father are parent-centered rather than child-centered. The proposed modifications are calculated to achieve a mathematically precise division of the child's time and appear to stem from Father's belief that splitting this child down the middle is the fairest means to resolve an impasse, a resolution we find unacceptable. Accordingly, we find no abuse of discretion and conclude that the record amply supports the trial court's determination.

¶ 15 Order affirmed.