J-S34030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.D.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.D.K. | : | |
| | : | |
| Appellant | : | No. 1083 MDA 2019 |

Appeal from the Order Entered June 10, 2019
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2019-04775

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 30, 2020**

T.D.K. ("Husband") appeals from the order issued on June 6, 2019 and entered on June 10, 2019, granting a final protection from abuse ("PFA") order in favor of B.D.K. ("Wife").  We affirm.

We glean the following relevant facts and procedural history from the record:  At the time this action was initiated, Husband and Wife had been married for approximately 27 years, had two sons (17 years and 23 years of age), and were in the process of obtaining a divorce.  Wife filed a petition for a PFA order against Husband on April 29, 2019, wherein she accused Husband of "verbally and emotionally abusing her, causing her great anxiety and distress."  PFA Petition, 4/29/19, at 2 ¶ 8.  She claimed that the emotional distress and anxiety "greatly exacerbated her multiple sclerosis symptoms[.]"

***Id.***[1]  Wife's petition also included allegations of prior incidents of physical, verbal, mental, and financial abuse by Husband.  ***Id.*** at 2 ¶ 9.  The trial court granted the petition and issued a temporary PFA order the same day.

A hearing was held on the matter on June 5 and June 6, 2019, at which both Husband and Wife testified regarding the allegations in Wife's petition.  Following is a summary of Wife's testimony:

> On April 24, 2019, [Wife] fell in the kitchen from soapy dishes [Husband] had left out.  After confronting [Husband] about the incident, he became very angry toward [her].  A few days later, on April 27, 2019, [Husband] was at work and [Wife] found herself to be a "sitting duck[,"] wondering whether [Husband] would be angrier when he returned home.  [She] called [him] to attempt to resolve the issue, but this led to a heated argument that lasted ninety (90) minutes….  [D]uring that call, [Husband] threatened her[,] stating that she was "pathetic and useless" with no way to support herself.  [Wife] stated that because her MS symptoms are exacerbated under stress, the phone call lead [*sic*] to her left leg becoming paralyzed and she experienced severe chest pains that lasted six (6) hours.  [She] went to West Shore Emergency Room the next morning[,] as she believed she was having a heart attack … directly due to [Husband's] actions toward her.
>
> [Wife] also alleged incidents of abuse[,] which occurred between June 16, 2018 and July 5, 2018.  During June of 2018, [Wife] had tried an experimental[,] medically[-]approved treatment that caused a rare reaction, including life[-]threatening falls in her home.  While many injuries [she] sustained were attributed to her constant falls, she testified to an incident when [Husband] angrily "stomped on her thigh," telling her to "Move. Hurry up!"  [Husband's] stomping on [Wife's] thighs left bruises and caused pain.

_____

[1] Wife was diagnosed in 2013 with secondary progressive multiple sclerosis (hereinafter referred to as "MS"), which causes mobility issues and fatigue. Wife's Brief at 3.

[Wife] believed her continuous falls were partially caused by [Husband's] intentionally giving her the wrong medications at the wrong times, causing serious side effects. [Wife] stated that she had "everything written down in a binder," but "was not given those [medications]" by [Husband]. [She] also testified that she had not injected herself with any medication from June 16th until June 29th, but nonetheless a month's supply was gone in two weeks. This discovery led [to] her ... continued fear that [Husband] was attempting to cause her serious bodily injury through misapplication of her medication.

On June 29, 2018, the parties' oldest son told [Husband] that the amount of Benadryl he was giving [Wife] could cause an overdose. [Husband] became angry, dismissed the son to go upstairs, [and] proceed[ed] to force [Wife] to take the medicine. At this time, [Wife] experienced a "lucid moment" and began to vomit up any medication she was unable to refuse and forced to consume by [Husband]. Following this incident, [she] intentionally did not take any medication until July 18, 2018, when she was able to visit the doctor and confirm which medication she should be taking.

On July 1, 2018, [Wife] was incontinent and urinated on the bathroom floor due to paralysis in her legs. [She] testified that [Husband] used her shirt to clean the urine, and then made her wear it after she crawled naked back to her bed in the dining room[,] as [he] refused to assist or care for her. [Husband] rejected ... [Wife's request for] a new shirt, telling her to ask one of her sons who were in the basement playing video games.

[Wife] also testified that [Husband] mentioned getting a gun on two occasions, stating that [she] could not put the "family through any more trouble" with her MS. [Wife] was also prevented from using the master bathroom between 8:00 p.m. and 8:00 a.m.[,] when [Husband] was sleeping and had the door barricaded.... [Wife] was fearful of [Husband's] having the gun, and fearful to come into the bedroom or [of] upsetting him[,] knowing he had a gun.

Lastly, [Wife] testified to an incident on July 5, 2018, when [Husband] blocked [her] from going to her scheduled doctor's appointment at 8:00 a.m. [Wife] was legally and physically capable of driving after stopping her medication on June 29, 2018. She testified that [Husband] told her, "[Y]ou are not going to your appointment.... [Y]ou are going to the nursing home today and will

never see your children again[,] and you are not in charge of you. I am in charge of you." When [she] attempted to raise herself from her walker, [Husband] threw her back down into her walker so hard that [she] tore the rotator cuff in both shoulders, and her arms immediately went limp. Despite the tears in both shoulders, [Wife] tried to pull herself up, but [Husband] grabbed her thumbs and bent them back so hard until they touched her forearm and tore the tendon of her right hand. As a direct result of this serious bodily injury inflicted by [Husband], [Wife] was unable to lift her arms above her bellybutton for 2 months and could not use her hands to eat, open things, or play the piano anymore. Immediately following the incident, [Husband] prevented [Wife] from going to a doctor to seek help, so she called 911. However, [she] did not tell the police what had happened because she had been "severely beaten and starved and drugged for two weeks" and "didn't want to get more injuries" from [Husband].

On July 18, 2018, thirteen days after [Husband] caused the tears in her rotator cuffs and thumbs, [Wife] was eventually taken to the hospital by her cleaning lady and friend, but explained to the doctors that it was her fault, as she was required to say by [Husband]. [Wife] testified that she was a "classic victim" at this point, as she lied to doctors about what had actually occurred.

Wife's Brief at 3-7 (citations to record omitted).

Throughout Husband's testimony, he denied the events as purported by Wife.[2] Husband testified that:

[He] never knew about [Wife's] cardiac event. [He] never stated he would withdraw [Wife's] medical or physical treatment[,] and to the opposite, spent thousands of dollars to provide for [her] needs.

During the period when [Wife was] using the experimental medication, [Husband] recalled her becoming completely paralyzed[,] and his sons would call him to help them with her. At times, [Wife] would keep falling and [would] prevent [Husband

---

[2] For instance, Husband flatly denied ever calling Wife "useless" or "pathetic," N.T. Hearing, 6/5/19, at 109-10, making her wear a urine-soaked shirt, *id.* at 123, slamming her into her wheelchair, *id.* at 131, stomping on her thigh, *id.* at 137, or ever threatening to keep their boys from her. *Id.* at 143.

and] his sons from helping her. [He] went on to testify that sometimes he and his sons would put [her] leg in such a way that it would hurt her and she would scream, "[Y]ou are hurting my fucking leg." Even though [Husband] … repeatedly dealt with cleaning up feces after [Wife] became incontinent and struggled with her violent behavior, [h]e never testified to wanting or attempting to hurt [her] in any manner.

Husband's Brief at 13-14 (citations to record omitted). Moreover, Husband testified that he never gave Wife medication. In fact, he stated that he did not even know what medications she was taking. N.T. Hearing at 141-42.

At the conclusion of the hearing, the trial court entered a final PFA order against Husband, effective June 6, 2019, and addressed the parties, in relevant part, as follows:

At issue is whether [Husband] knowingly engaged in a course of conduct or repeatedly committed acts toward another person under circumstances that placed that person in reasonable fear of bodily injury.

In the context of a [PFA] case, the [c]ourt's objective is to determine whether the victim is in reasonable fear. The intent of … [Husband], be it malevolent or benevolent, is of no moment. [Wife] is viewed as found in this case [to be] suffering from the effects and treatments for secondary progressive multiple sclerosis.

It is clear that [Husband] has engaged in conduct, albeit in his mind not abusive, but to … [Wife] it is, and it has placed her in fear. Is this fear rational? The [c]ourt does not judge on that basis, but rather [considers] is it reasonable for her? With that in mind, we will [grant the petition].

*Id.* at 155-56.

Husband filed a notice of appeal on July 3, 2019, and was ordered by the trial court, on July 10, 2019, to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. After Husband's failure to comply, the trial

court issued a statement, in which it determined that Husband's claims had been waived for failure to provide a Rule 1925(b) statement. **See** Statement in Lieu of Pa.R.A.P. 1925(a) Opinion ("Statement"), 9/4/19, at 2 (citing **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005)).

On September 12, 2019, Husband's counsel filed a motion to allow Husband to submit a Rule 1925(b) statement *nunc pro tunc*, in which counsel asserted that the trial court had mailed the order directing the filing of a Rule 1925(b) statement to an ancillary office, rather than counsel's primary address. The trial court denied counsel's motion on October 7, 2019. On October 17, 2019, Husband filed a motion for reconsideration, which was also denied. On November 4, 2019, Husband filed an application for relief with this Court, which we granted on November 19, 2019. Accordingly, he timely filed a Rule 1925(b) statement *nunc pro tunc*.

Husband now presents the following issues for our review on appeal:

I.      Whether the trial court committed an error of law or abuse of discretion by finding sufficient evidence under 23 Pa.C.S.[] § 6102(a)(5) to issue a final [PFA] order[?] More particularly, there was insufficient evidence to prove by a preponderance of evidence that:

    a.  [Husband] acted knowingly;

    b.  That [Husband] engaged in a course of conduct or repeatedly committed acts toward [Wife];

    c.  That [Husband's] actions placed [Wife] in reasonable fear of bodily injury;

    d.  That [Husband's] actions were without proper authority[.]

II.    Whether the trial court committed an error of law or abuse of discretion by determining that [Wife] was in reasonable fear of bodily injury[?]

III.   Whether the trial court committed an error of law by failing to use the reasonable person test, which this court characterized as the "rational test," and by instead applying a subjective test (*i.e.*[,] is it reasonable for her?) to determine that [Wife] was in reasonable fear of bodily injury[?]

Husband's Brief at 4-5 (unnecessary capitalization omitted).

Initially, we note our standard of review:

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014). This Court has emphasized that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008). The PFA Act, 23 Pa.C.S. §§ 6101-6122, defines "abuse," in relevant part, as follows:

"**Abuse.**" The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

…

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.[3] The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any

_____

[3] The PFA Act does not define "bodily injury." The Pennsylvania Crimes Code, however, defines "bodily injury" as "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. ***See*** 23 Pa.C.S. § 6102(b) ("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)."). A "reasonable belief" is defined by the Crimes Code as "[a] belief which the actor is not reckless or negligent in holding." 18 Pa.C.S. § 103.

criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(5).

***T.K. v. A.Z.***, 157 A.3d 974, 976-77 (Pa. Super. 2017). "The PFA Act does not require actual physical harm … for a PFA [o]rder to issue, 'reasonable fear' is sufficient." ***S.W. v. S.F.***, 196 A.3d 224, 230 (Pa. Super. 2018) (citing 23 Pa.C.S. § 6102). Moreover, we note that "[c]redibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder." ***Mescanti v. Mescanti***, 956 A.2d 1017, 1019-20 (Pa. Super. 2008).

Instantly, the trial court's issuance of a final PFA order against Husband was based on its determination that Husband knowingly engaged in a course of conduct or repeated acts toward Wife, which placed Wife in reasonable fear of bodily injury. ***See*** Statement at 1; 23 Pa.C.S. § 6102(a)(5). In support of its findings, the trial court issued the following statement:

> [T]estimony adduced at trial indicates that the parties are embroiled in a bitter divorce. Wife credibly testified that Husband had caused her pain and injury when "he stomped on [her] thigh." She further testified to an incident where she, having become incontinent due to complications from her [MS], had urinated on the bathroom floor, and Husband cleaned the urine with [W]ife's t-shirt and made [her] wear the soiled t-shirt. Wife attributed physical chest pain … [to] stress that was inflicted upon her by Husband.
>
> Husband's testimony, in part, corroborated Wife's reasonable fear of imminent bodily injury. Specifically, he recounted that "sometimes [he and their sons] would put [Wife's] leg a certain way that would hurt her[,] and she would scream at [them,] … ['Y]ou are hurting my fucking leg. You are hurting my fucking leg.'" Husband further acknowledged bruises on Wife's

legs, although he attributed them to Wife['s] "fall[ing] hard on the toilet[."]

Whether Husband intended to hurt Wife is of no moment. Whether Husband experienced frustration and "burnout" as a caretaker[,] or whether his actions were well intentioned are not the issues that must be addressed. When these sad events are placed within the context of an acrimonious divorce, there is sufficient evidence to establish that a reasonable person under similar circumstances would have a reasonable fear of future abuse and injury warranting a [PFA] order.

No person, with or without a disability, should be forced to wear a soiled t-shirt as a form of domestic punishment, bruised when being repetitively "aided" in movement, or subjected to recurrent physical placement that causes screaming pain. This is an objective, not subjective, standard. These repeated acts are the basis of an order [for] protection.

Supplemental Statement In Lieu of 1925(a) Opinion ("Supplemental Statement"), 12/23/19, at 2-4 (footnotes omitted).

Husband's first two claims challenge the sufficiency of the evidence supporting the trial court's final PFA order.

When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, the reviewing court must "view the evidence in the light most favorable to the verdict winner, granting her the benefit of all reasonable inferences." *Fonner v. Fonner*, 731 A.2d 160, 161-63 (Pa. Super. 1999). The reviewing court then determines whether the evidence was sufficient to sustain the trial court's conclusions by a preponderance of the evidence. The preponderance of the evidence standard is "defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (citation omitted).

*Mescanti*, 956 A.2d at 1020.

Husband's claim that there was insufficient evidence to support the finding of abuse under Section 6102(a)(5) is largely based on his assertion

that he did not knowingly or intentionally abuse Wife. He relies heavily on the following statement by the trial court in support of his contention: "It is clear that [Husband] has engaged in conduct, *albeit in his mind not abusive*, but to [Wife] it is, and it has placed her in fear." Statement at 1 (emphasis added). Husband misconstrues the trial court's statement that his conduct was "albeit in his mind not abusive[,]" as a declaration by the court that he lacked the requisite knowledge to commit abuse against Wife. Husband's Brief at 23. He then reasons that if he "did not believe his conduct was abusive, then he could not possibly know he was engaging in a course of conduct that would place [Wife] in a reasonable fear of bodily injury." *Id.* Husband's reliance on the trial court's statement is misplaced.

It is clear that Husband's intent has no relevance in the determination of whether Wife was reasonably in fear of bodily injury. *See Raker*, 847 A.2d at 725 ("In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…. [The a]ppellant's intent is of no moment."). Here, the trial court found that Husband engaged in conduct, which was abusive *in Wife's mind*, and that such conduct reasonably placed her in fear of bodily injury. *See* Statement at 1. It correctly opined that "[w]hether Husband intended to hurt Wife is of no moment." Supplemental Statement at 3.

Husband further argues that the trial court "completely ignore[d]" the most recent incident in April of 2018, which triggered Wife's filing of a PFA petition, because such events would not justify the issuance of a PFA order.

- 10 -

*See* Husband's Brief at 23-24. Husband avers that in order to rationalize its decision, the trial court looked past the April 2019 incident and focused solely on the events between June 16, 2018 and July 5, 2018, which occurred ten months prior to the filing of Wife's petition. *Id.* at 26.[4] To the contrary, we discern that the trial court properly considered the totality of circumstances in determining whether a final PFA order was justified. *See Mescanti*, 956 A.2d at 1024 (where this Court "[c]onsidered as a whole[,]" the "totality of [the w]ife's testimony" regarding the husband's course of conduct, not just a single incident, in determining that the wife had established "abuse" under Section 6102(a)(5)).

To the extent that Husband avers the June and July of 2018 incidents were too remote in time to be considered by the court, we deem this argument to be belied by case law. In *Miller ex rel. Walker v. Walker*, 665 A.2d 1252, 1259 (Pa. Super. 1995), this Court held that it was not an abuse of discretion

_____

[4] Regarding the June and July of 2018 incidents, Husband implores this Court to "[r]emember … that the [t]rial [c]ourt opined that [Husband] did not believe his conduct was abusive." Husband's Brief at 26. Husband insists "there is no possible way the [t]rial [c]ourt could determine [he] purposefully stepped on [Wife's] leg to cause her pain and injury. To believe so would completely contradict the [t]rial [c]ourt's own statements and opinion." *Id.* at 26-27. Again, we note that whether Husband perceived his actions as abusive is of no moment. *See Bucchalter*, 959 A.2d at 1263 (noting that in the context of a PFA case, the focus is on whether the victim is in reasonable fear of imminent serious bodily injury and that "[t]he intent of the alleged abuser is of no moment"). Moreover, the trial court found Wife's testimony credible. *See Smith v. Shaffer*, 515 A.2d 527, 528 (Pa. 1986) (determination of credibility is solely for the trier of fact).

for the trial court to consider evidence of abuse that occurred *six years* earlier. We reasoned that:

> In light of the protective purposes of the [PFA Act], it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony. However, it was not an abuse of discretion for the trial court to hear the evidence. Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order.

*Id.* at 1259. *See also Raker*, 847 A.2d at 725 (concluding that the trial court did not abuse its discretion by considering testimony of previous incidents that were not even included in the plaintiff's PFA petition).

Moreover, we reject Husband's argument that the evidence of abuse presented by Wife is limited to three particular incidents, which took place in June and July of 2018, (*e.g.*, Husband stomped on Wife's thigh, Husband forced Wife to wear a urine-soaked shirt, and Husband moved Wife's leg in a certain way that hurt her and caused her to scream), and that these three incidents do not amount to a "course of conduct[,]" as required to establish abuse under the PFA Act. *See* Husband's Brief at 29. To the contrary, the record reflects ample testimony from Wife to support the trial court's finding of an abusive course of conduct. For instance, Wife claimed that Husband was very angry any time he had to help her and that he was very rough with her. N.T. Hearing at 148. She also testified regarding extensive bruising and other injuries, which although Husband did not inflict upon her, he allowed to occur

under his care, including a deep laceration on the back of her right thigh that was left untreated and became infected. *Id.* at 29-30, 47-48. Wife further claimed that she had been "severely beaten and starved and drugged[,]" *id.* at 15, and that Husband attempted to overdose her medication. *Id.* at 66. Wife's PFA petition also indicates that, in addition to the June and July of 2018 incidents, she "has suffered extensive physical neglect and abuse from [Husband] on many other occasions." PFA Petition at 2 ¶ 9.[5]

Next, Husband claims that there is no evidence in the record to support the trial court's finding that Wife was in reasonable fear of bodily injury. He asserts that there is no history of abuse on his part and that he never caused, or even threatened to cause, Wife bodily harm. Husband's Brief at 34, 36. Husband erroneously focuses on the most recent "dirty dishes" incident and ignores all of his past conduct toward Wife. *Id.* at 43-44. He admits that he "had become angry with [Wife] for complaining about the upkeep in the kitchen[,]" but states that he did not physically harm or threaten to harm her. *Id.* Additionally, he attempts to argue that the June and July of 2018 incidents have no connection to his most recent conduct and that the trial court erred in relying on the prior events to infer that Wife possessed a fear of bodily injury. *Id.* at 34-35. Husband concludes that "there is no possible way an

---

[5] Wife's petition references physical, verbal, mental, and financial abuse by Husband. *Id.* It also explains that Husband's threats caused her "extreme emotional and physical distress[,]" which … greatly impact[ed] her [MS] condition." *Id.*

individual in like circumstances could be placed in reasonable fear of bodily injury." *Id.* at 43.

In contravention to Husband's claims, there is ample evidence to support the trial court's finding that Wife was in reasonable fear of bodily injury. Regarding the most recent incident, Wife testified that after Husband became angry with her on the morning of April 27, 2019, she locked herself in her room and did not leave until her son told her that Husband had left, and that she was relieved that he was gone. N.T. Hearing at 8. Wife worried that Husband's anger would escalate, though, and that he would be angrier when he returned home. *Id.* She described herself as a "sitting duck." *Id.* Thus, she called him and asked him to talk things out with her "so that there wasn't any more stress in the home." *Id.* at 8-9. During the phone call, Husband yelled at Wife, "threatened" her, and caused her to become so upset that she experienced "really bad chest pains." *Id.* at 9.[6]

_____

[6] A person can be placed in reasonable fear of bodily injury based on a telephone call, particularly when coupled with the alleged abuser's past history of violence. *See Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 209 (Pa. Super. 2002). We have also determined that protection under the PFA Act does not require physical violence. *See Fonner*, 731 A.2d at 163 (concluding that the evidence constituted "reasonable fear of imminent serious bodily injury" where the appellant was loud, angry, and badgering the appellee, but the only physical contact to occur was when the appellant touched the appellee's arm). To the extent that Husband attacks Wife's allegations of abuse on the grounds that she failed to notify medical personnel or to present supporting medical evidence, we have repeatedly held that "neither the PFA Act nor the body of case law interpreting it requires that there be medical evidence or that the [w]ife seek medical treatment for an injury in order for

The trial court also took into consideration Husband's past conduct, *e.g.*, his stomping on Wife's leg, throwing Wife into her walker, misusing Wife's medications and withholding basic needs from her, and mentioning of a gun. It is well-established that the entire course of conduct by the alleged abuser may be considered when determining whether the victim was in reasonable fear of bodily injury. ***See T.K.***, 157 A.3d at 978 (upholding a PFA order under Section 6102(a)(5) where the appellee "clearly testified to her deep concern for her safety, opining that [the a]ppellant's behavior would eventually escalate from repetitive stalking to seeking to cause her bodily harm"); ***Raker***, 847 A.2d at 726 (explaining that in light of the protective purposes of the PFA Act, it is not an abuse of discretion for the court to inquire into the history of the parties in order to determine the reasonableness of the petitioner's fear). Thus, we discern no error or abuse of discretion by the trial court.

Throughout his brief, Husband fails to recognize that the trial court believed Wife's testimony regarding his abusive conduct and her fear of him. We defer to the credibility determinations of the trial court as to witnesses who appeared before it. ***See Fonner***, 731 A.2d at 160. Thus, we deem Wife's testimony regarding her fear of Husband, in conjunction with her testimony about Husband's actions in April of 2019, as well as his prior actions, sufficient

---

her testimony to be found credible." ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005).

to support the trial court's finding that she was in reasonable fear of bodily injury. *See Raker*, 847 A.2d at 746 (citing *Williamson v. Williamson*, 586 A.2d 967, 972 (Pa. Super. 1991) (providing that the "finder of fact is entitled to weigh evidence and assess credibility" and to "believe all, part or none of the evidence presented")). Viewing the evidence in the light most favorable to Wife, we conclude that the record amply supports the trial court's finding of abuse, pursuant to Section 6102(a)(5). Based on the foregoing, we discern no error of law or abuse of discretion in the trial court's issuance of a final PFA order.

Finally, Husband claims that the trial court erred by applying a subjective test, rather than a reasonable person test, in determining whether Wife was in reasonable fear of bodily injury. Husband's Brief at 45.[7] He asserts that the trial court mistakenly considered whether "this particular [p]laintiff was in reasonable fear, regardless of whether that fear made sense[] or was 'rational[,]'" rather than applying an objective test. *Id.* at 46-47. Husband is not entitled to any relief on this claim.

_____

[7] Husband relies solely on the following statement by the trial court in support of his argument:

> It is clear that [Husband] has engaged in conduct, albeit in his mind not abusive, but to [Wife] it is, and it has placed her in fear. Is this fear rational? The [c]ourt does not judge on that basis, but rather [considers] is it reasonable for her? With that in mind, we will grant the petition.

Statement at 1-2.

It is well-settled that, "[i]n the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of … bodily injury…." *Buchhalter*, 959 A.2d at 1263 (quoting *Raker*, 847 A.2d at 725). *See also Fonner*, 731 A.2d at 163 (noting that "the victim's fear of serious bodily injury must simply be reasonable"). Instantly, the trial court found "sufficient evidence to establish that a reasonable person under similar circumstances would have a reasonable fear of future abuse and injury warranting a [PFA o]rder." Supplemental Statement at 3-4. The court further opined: "No person, with or without a disability, should be forced to wear a soiled t-shirt as a form of domestic punishment, bruised when being repetitively "aided" in movement, or subjected to recurrent physical placement that causes screaming pain. This is an objective, not subjective standard." *Id.* at 4. Based on the foregoing, we conclude that the trial court applied the appropriate standard in finding that Wife's fear was reasonable, and we discern no abuse of discretion.

Accordingly, we affirm the trial court's order entered on June 10, 2019, granting a final PFA order in favor of Wife.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/30/2020</u>