J-A11023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.Z. | |
| | No. 1983 MDA 2016 |

Appeal from the Order Entered November 9, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2014-2344

BEFORE: SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.: **FILED JULY 10, 2017**

B.B. ("Father") appeals from the November 9, 2016 order entered in the Cumberland County Court of Common Pleas setting forth the amended Parenting Plan for M.T.B. ("Child"). We affirm.

The trial court summarized the relevant history of this matter as follows:

> This is a custody action between Plaintiff Father [B.B.] and Defendant Mother [L.Z.] that concerns their only daughter, a child who is now eight (8) years old. The action began in December 2009 when Father filed a custody complaint in York County and the matter was generally handled in that county until transferred in April 2014 to Cumberland County. The issue on appeal began in March 2016 by way of a custody modification that resulted in a Parenting Plan and Assessment being filed on August 2, 2016.

---

[*] Former Justice specially assigned to the Superior Court.

Father filed a Petition for Emergency Relief in the latter part of August 2016 that was denied on August 29, 2016, as the Parenting Plan specifically provided options to address the circumstances denominated in the Petition as an emergency. On September 9, 2016, the court *sua sponte* reconsidered the Parenting Plan upon receipt of the chemical tests results that permitted review of the Parenting Plan by its terms. A further trial was scheduled to include the medical testimony on Mother's chronic health issues that were not provided during the course of the initial trial and information on school relocation. A trial was scheduled for November with a late October pretrial conference. Mother filed a Motion for Reconsideration of the September 9, 2016 Modification of the Parenting Plan based on the chemical tests results, which the court denied on September 20, 2016. Mother filed an appeal to the Superior Court that was discontinued on October 20, 2016. The trial based on manifest necessity for the lack of coverage of the prescribed factors was held and an amended Parenting Plan entered on November 9, 2016. Father has now appealed that decision and filed a twelve (12) page concise statement of matters complained on appeal, which this opinion will attempt to succinctly address.

1925(a) Opinion, 1/9/17, at 1-2 ("1925(a) Op.").

Father raises the following 21 issues[1] on appeal:

_____

[1] We note that Father's brief does not comply with the dictates of Pennsylvania Rule of Appellate Procedure 2116(a), which requires that the statement of question involved "state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail." Indeed,

[t]he approach to appellate advocacy embarked on by present counsel for [Father] brings to mind the words of the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

With a decade and a half of federal appellate court experience behind me, I can say that

*(Footnote Continued Next Page)*

AUGUST 2, 2016 ORDER

(A) Did the lower court err in limiting the amount of time that each side had to present their fact witnesses (including the parties) to seventy-five (75) minutes, thereby depriving Father the right to cross examine Mother's fact witnesses on whom the Judge relied in fashioning the award of custody?

(B) Did the lower court err in reaching a decision contrary to the weight of evidence, including the lower court's own "factual findings" as listed in its August 2, 2016 Order?

(C) Did the trial court fail to properly analyze all of the custody and relocation factors (if applicable), instead, offering "findings of fact" under each factor but no discussion or insight into how or why the court issued the Order it did?

(D) Did the trial court err in considering the relocation factors when Father was not moving a "significantly distant location" from Mother, nor would such move inhibit either party's custodial rights?

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to **any** of them . . . [and] it is [this] presumption . . . that reduces the effectiveness of appellate advocacy.

Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982) (emphasis in original).

_**Commonwealth v. Robinson**_, 864 A.2d 460, 480 n.28 (Pa. 2004) (some alterations in original). Although the Rules of Appellate Procedure allow this Court to quash or dismiss an appeal if the defects in the brief are substantial, _**see**_ Pa.R.A.P. 2101, we will decline to find waiver on this basis given the sensitive nature of this child custody matter.

(E) Did the lower court err in reaching a decision exactly opposite of the recommendations of Kasey Shienvold, Psy.D., despite the custody evaluator's uncontroverted testimony and recommendations regarding this child with ADHD who needed more structure and stability which Father could provide, without giving any rationale or reasoning for [its] decision?

(F) Did the lower court err by failing to consider the domestic violence between Mother and her boyfriend as testified to by Father and the custody evaluator and as reported to Father and the custody evaluator by the Child?

(G) Did the lower court err by failing to consider Father's testimony concerning Mother's abuse of prescription drugs, as well as the Report and testimony of the custody evaluator that the child had reported to him that Mother and her boyfriend had physical altercations about "pills and money"?

### AUGUST 29, 2016 ORDER

(H) Did the lower court err in failing to consider the concerns about drugs within Mother's household as subsequently proven by the arrest of Colin Foltz (Mother's boyfriend) for possession of "2 hypodermic needles, metal spoon, small rubber bands, empty box of suboxone" (R. 536a) on July 15, 2016, a mere 9 days after the conclusion of the July 6th trial date (at which trial Mother and her boyfriend had both testified that there were no issues with "money and pills") (R.335a) and before the lower court entered its August 2, 2016 Order even though the matter was once again brought to the court's attention?

(I) Did the lower court err by waiting until August 29, 2016[2] to enter an Order and in so doing, failing to consider the child's best interests and safety when it finally issued the Order to address the Emergency Petition filed by Father on Wednesday, August 24, 2016 at 12:19 p.m. which was filed by Father immediately after discovering (merely by happenstance and not by Mother advising him of this information) Mother's boyfriend's arrest?

> [2] Five (5) days after the Emergency Petition was filed which consisted of three (3) business days.

(J) Did the lower court err in failing to consider the child's best interests and safety when it failed to hold a hearing to address Father's August 24, 2016 Emergency Petition and summarily denied all of Father's requested relief therein?

(K) Did the lower court err in failing to hold a hearing after the filing of Father's August 24, 2016 Emergency Petition when the veracity of the testimony provided by Mother and her boyfriend at the July 6, 2016 Hearing was clearly now questionable, at best, and the lower court was in the best position to make the credibility determination?

NOVEMBER 9, 2016 ORDER

(L) Did the lower court err in limiting the time that each side had to present their case to seventy (70) minutes for each side such that Father did not have the opportunity to call any of his fact witnesses, nor to recall Father to address issues raised by Mother, nor to call rebuttal witnesses to address allegations made by Mother?

(M) Did the lower court err in reaching a decision contrary to the evidence and testimony presented, specifically including the testimony and November 5, 2016 letter/report of Father's expert, Ted D. Kosenske, M.D.?

(N) Did the lower court err in reaching a decision contrary to the evidence and testimony presented, specifically including the testimony of Mother's expert, Jeffrey P. Sarsfield, M.D.?

(O) Did the trial court fail [to] properly analyze all of the custody and relocation factors (if applicable), instead, offering what appear to be "findings of fact" under each factor but no discussion or insight into how or why the court issued the Order it did, and did the court fail to update its "analysis" in certain factors that should have been updated from the August 2, 2016 Hearing?

(P) Did the trial court err in considering the relocation factors when Father was not moving a "significantly distant location" from Mother, in fact, Father had already moved, nor would such move inhibit either party's custodial rights and therefore, the question was merely a question of legal custody - should child change schools?

(Q) Did the lower court err in failing to consider the experts' opinions and factual testimony regarding Mother's overuse of her prescription medication and the potential adverse safety ramifications when fashioning an Order which does not address the child's best interests in this situation or address safeguards for the child when she is in the care and custody of Mother when the safety of the child is to be a factor that is to be weighted in consideration?

(R) Did the lower court err in failing to consider the reports and opinions of the child's teacher, guidance counselor and principal, all of whom testified to a marked positive difference in the child since she had been in Father's sole custody (with only periods of supervised custody to Mother)?

(S) Did the lower court err by "punishing" Father for abiding by and following the Court's Order of Supervised Custody and by trying to protect child from Mother's overuse of prescription medication and ensuring that the child was properly supervised during Mother's periods of custody and during calls with Mother so that Mother could not continue to tell child it was all Father's fault that child could not see Mother?

(T) Did the lower court err by failing to consider the domestic violence between Mother and her boyfriend as testified to by Father and the custody evaluator and as reported to Father and the custody evaluator by the Child despite the fact that this is to be a weighted factor?

(U) Did the lower court err by failing to consider the testimony of Father, Dr. Sarsfield, Dr. Kosenske, and Dr. Shienvold (as reported by the child) concerning Mother's use/abuse of prescription drugs when same is not only a factor under the custody statute, but also one which is to be weighted in consideration?

Father's Br. at 44-51 (suggested answers omitted).

As a preliminary matter, we conclude that Father's issues arising from the trial court's August 2, 2016 and August 29, 2016 orders, with the exception of Father's challenge to the time limitation for presentation of

witnesses imposed by the trial court, are moot. The November 9, 2016 order rendered the August 2, 2016 order inoperative because the parenting plan in the November 9 order superseded the parenting plan in the August 2 order. The August 29, 2016 order denied Father's petition for emergency relief. On September 9, 2016, however, the trial court, *sua sponte*, treated the petition as a motion for reconsideration of the August 2, 2016 order and granted Father relief.[2]

_____

[2] Father's petition for emergency relief requested:

1) that the parties shall continue to share legal custody of [Child]; 2) Father be granted primary physical custody of [Child] pending further Order of Court; 3) that Mother be granted periods of supervised custody; 4) that Mother and [Mother's boyfriend] undergo a full-panel hair follicle drug screen within forty-eight (48) hours of the issuance of this Order to be paid at Mother's expense and that the results of said drug screen be released directly to the undersigned; 5) that [Child] have NO CONTACT with Mother's boyfriend, . . . 6) at no time shall Mother's periods of supervised custody occur at the home of Mother's boyfriend; 7) that Mother be ordered to undergo and cooperate in co-parenting counseling with Heather Jay -Boardman or with Dennis Graybill and that all costs of said co-parenting counseling not covered by insurance be borne equally by the parties; 8) that Mother be ordered to cooperate in putting [Child] in counseling with Shanen Turk-Gellar at New Passages and that any costs of [Child]'s counseling not covered by insurance be borne equally by the parties; 9) that a Hearing be scheduled to address a permanent change of the custodial schedule based upon [Child]'s best interests in light of this new information; and 10) that Father be awarded attorneys' fees, costs and expenses for Mother's obdurate and vexatious behavior and failure to act in good faith and

*(Footnote Continued Next Page)*

In Father's numerous issues, he challenges the trial court's rulings and findings on four separate bases: 1) the trial court erred in limiting the parties' time to present witness; 2) the trial court erred in considering the relocation factors, when those factors were irrelevant; 3) the trial court erred in its analysis of the custody and relocation factors; and 4) the trial court erred in failing to consider and credit the evidence presented by Father.

"Our concern in any custody or relocation matter is the best interest of the child, which considers all factors, on a case-by-case basis, that legitimately affect a child's physical, intellectual, moral, and spiritual well-being." ***S.J.S. v. M.J.S.***, 76 A.3d 541, 554 (Pa.Super. 2013). In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of

*(Footnote Continued)* ————————————

> consistent with the best interests of the parties' minor child.

Pet. for Emer. Rel., 8/24/16, at 8-9 (unpaginated). The September 9, 2016 order modified the August 2, 2016 parenting plan as follows: 1) Child was to live with Father full-time, with Mother having supervised custody; 2) Child was to remain at her school with Father responsible for school transportation; 3) the rest of the August 2, 2016 parenting plan remained in effect. The order scheduled a hearing to address what the trial court termed "deficit[s] in the testimony of Mother's current health status." Order, 9/9/16, at 2. The trial court scheduled the hearing for November 9, 2016.

the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa.Super. 2010)) (internal citations omitted). This Court has also stated that "the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). "[T]he knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." *Id.* (quoting *Jackson*, 858 A.2d at 1254).

"An abuse of discretion is not merely an error of judgment." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa.Super. 2007) (quoting *Arbet v. Arbet*, 863 A.2d 34, 39 (Pa.Super. 2004)). A trial court abuses its discretion when it "overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias

or ill will." ***ABG Promotions v. Parkway Publ'g, Inc.***, 834 A.2d 613, 616

(Pa.Super. 2013) (*en banc*).

Section 5328(a) of the Child Custody Act delineates the factors that a

trial court must consider when awarding any form of custody.[3]   Section

_____

[3] The factors to be considered when determining an award of custody are:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where

*(Footnote Continued Next Page)*

5337(h) delineates 10 factors that a trial court must consider in determining whether to grant a proposed relocation.[4]

*(Footnote Continued)* ——————————

reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

[4] The factors to be considered in determining whether to grant a proposed relocation are as follows:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to

*(Footnote Continued Next Page)*

*(Footnote Continued)* ——————————

relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

The trial court explained that it had exercised its broad discretion to limit the parties' time to present testimony. 1925(a) Op. at 7. It also concluded that it was required to evaluate the relocation factors, because Father's request for primary custody would include a new school district and school for Child. *Id.* at 5. The trial court reviewed the evidence and testimony presented and considered all of the custody and relocation factors, *see* Order, 11/9/16, at 9-16, and found that the custody schedule in the November 9, 2016 order was in Child's best interests. *Id.* at 17.

At the conclusion of its opinion, the trial court explained:

> Mother and Father have considerable room to grow as parents. Neither would be considered a model parent, nor is the custody action a test of who is the better parent. Indeed, this case exemplifies the problems with this system of custody determination. The parties come into court, lob verbal grenades at one another and the family, and then the law expects a court to put the family back together again. The court does not err in focusing in on the positives within the child's life and promoting those positives. In this case, one of the positives is the child's school; one that she has been a part of for years, the one that provides her with stability, continuity and development. Father was awarded a shared percentage of custody as per his modification request; with the ability to modify the cycle of custody as the child needs, which could include his specifically requested 3/2/2/3 cycle, if Father and Mother can grow. Father's complaint that [he] is not named primary custodian falls on deaf ears, as he has not shown he is ready or capable for that responsibility, nor that a change in schools is in the best interests of their child.

1925(a) Op. at 7-8 (footnote omitted). After reviewing the parties' briefs, the certified record, and the relevant law, we conclude the trial court did not

abuse its discretion. We agree with and adopt the well-reasoned opinion of the Honorable Thomas A. Placey. *See id.* at 3-8.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2017

A11023-17

TCO

#1

2014-02344-0088 F#1153938 Fee:$0.00
OPINION

Rcpt Z113899  1/10/2017 8:49:30 AM
David D. Buell, County Prothonotary

B    B,
             Plaintiff


       V.


L      Z
             Defendant

**Commonwealth of Pennsylvania**

County of Cumberland

IN THE COURT OF COMMON PLEAS
OF THE NINTH JUDICIAL DISTRICT

2014-02344 CIVIL TERM

IN CUSTODY

## IN RE: OPINION PURSUANT TO PA.R.A.P. 1925(A)

PLACEY, C.P.J.  9 JANUARY 2017

### PROCEDURAL HISTORY

This is a custody action between Plaintiff Father and Defendant Mother that concerns their only daughter, a child who is now eight (8) years old. The action began in December 2009 when Father filed a custody complaint in York County and the matter was generally handled in that county until transferred in April 2014 to Cumberland County. The issue on appeal began in March 2016 by way of a custody modification that resulted in a Parenting Plan and Assessment being filed on August 2, 2016.

Father filed a Petition for Emergency Relief in the latter part of August 2016 that was denied on August 29, 2016, as the Parenting Plan specifically provided options to address the circumstances denominated in the Petition as an emergency. On September 9, 2016, the court *sua sponte* reconsidered the Parenting Plan upon receipt of the chemical tests results that permitted review of the Parenting Plan by its terms. A further trial was scheduled to include the medical testimony on Mother's chronic health issues that were not

provided during the course of the initial trial and information on school relocation. A trial was scheduled for November with a late October pretrial conference. Mother filed a Motion for Reconsideration of the September 9, 2016 Modification of the Parenting Plan based on the chemical tests results, which the court denied on September 20, 2016. Mother filed an appeal to the Superior Court that was discontinued on October 20, 2016. The trial based on manifest necessity for the lack of coverage of the prescribed factors was held and an amended Parenting Plan entered on November 9, 2016. Father has now appealed that decision and filed a twelve (12) page concise statement of matters complained on appeal, which this opinion will attempt to succinctly address.

## FINDING OF FACTS

The facts found in the Parenting Plan and Assessments of August 2, 2016 and November 9, 2016, are incorporated in this Opinion by reference. Additionally, it is reiterated, as previously noted, that Mother has had a chronic health issue for which she is treating with opioids and to which, both experts agree, she is addicted to in the clinical sense, which the court finds was through the unscrupulous prescriptions of the now deceased Dr. Lee, with whom this court was familiar because of his criminal charges related to addicting patients and then extracting sexual favors for continued prescriptions.[1] Mother's current healthcare provider acknowledges that she has a legitimate chronic health issue, which he is attempting to reduce from the high volumes of Dr. Lee, and opines that Mother is not incapable of any function due to her current level of treatment. Mother intentionally made a false statement and Father deliberately omitted facts about his knowledge of Mother's opioid use that had a direct bearing on the August 2, 2016 custody decision. Father is also found to be attempting back door

---

[1] Dr. Lee died before the criminal charges reached a conclusion.

2

child relocation for which he is held to the additional factors that he did not supply, even though given an additional opportunity. Further, Father failed to comply with the Parenting Plan directive of obtaining an IEP for the child.

## DISCUSSION

*Statement of Law: Relocation.* Chapter 53 of Title 23 provides the legal statutory authority that courts are to follow in custody actions. When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.,* 33 A.3d 73, 80 (Pa. Super. 2011). All of the custody factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order. *A.V. v. S.T.,* 87 A.3d 818, 822 (Pa. Super. 2014).

A trial court must consider all ten relocation factors and all sixteen custody factors when making a custody decision that also involves a relocation decision. *A.M.S. v. M.R.C.* 70 A.3d 830, 836 (Pa. Super. 2013). This court has been reversed when the Superior Court found it omitted consideration of relocation factors in a custody award in which non-custodial parent sought primary physical custody through a petition to modify custody and did not formally request relocation but the practicality of the petition sought primary custody that would result in the children's relocation. *See, A.Y. v. H.Z.,* 2038 MDA 2013 (Pa. Super. May 5, 2014)(Non-Precedential Decision). Thus, when a primary custody change is sought that would significantly impair the ability of a non-relocating parent to exercise custodial rights the Section 5337(h) factors must be considered.

*Testimony.*

3

No one who takes the witness stand is entitled to be believed. Credibility is more than just the truthfulness of the witness. Credibility is both the truthfulness and the accuracy of what the witness says. It includes not only considerations of bias or dishonesty, but also defects in the ability to observe, remember, or recount. Even uncontradicted testimony need not be accepted as either true or accurate, especially opinion evidence. A jury, like any other fact finder, "may accept all, none, or part of any expert's testimony" including that of an expert.

Pa. SSJI (Civ) 4.20 (citations omitted)

*Limitations.* Custody trials before a judge shall commence within 90 days of the date the scheduling order is entered. Pa. R.C.P. No. 1915.4(c). Trials shall be scheduled to be heard whenever possible on consecutive days, if not, then the trial shall be concluded not later than 45 days from commencement. *Id.* The trial judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded. Pa. R.C.P. No. 1915.4(d). The time for argument of cases on the regular list shall be limited to not more than 30 minutes for each side. Pa. R.A.P. 2315(d).

In all civil litigation, the trial judge possesses broad power and discretion to control the course of the trial. *See* 1 Standard Pennsylvania Practice 2d § 48:1 (1999 ed.). While every litigant is "entitled to a fair and impartial trial, ... that does not mean that a trial judge must be 'a mere moderator.'" *Keating v. Belcher*, 384 Pa. 129, 132, 119 A.2d 535, 537 (1956). "It is axiomatic that the conduct of a trial is the province of the judge. [Her] discretion, exercised without abuse, must control." *De Fulvio v. Holst.* 239 Pa. Super. 66, 362 A.2d 1098, 1099 (Pa. Super. 1976). *See also Leasure v. Heller*, 436 Pa. 108, 258 A.2d 855 (1969) (trial court is allowed wide discretion to exercise control over conduct of counsel, provided court does not abuse or arbitrarily exercise its discretion).

*Daddona v. Thind*, 891 A.2d 786, 800 (Pa. Commw. 2006).

*Application of Law to the Facts:* Father's claims of error are distilled into four composite areas:

1. Father objects to the *relocation* standards when having sought primary custody that would move child to another county;

2. Mother's *opioid* drug habit that makes her a wholly unfit parent;

3. The courts not believing absolutely all of Father's witnesses and their *testimony*; and

4. The court setting a time *limitation* for the presentation of the factors by lay witnesses.

*Relocation.* The custody and relocation factors are not new and there was no attempt to utilize hidden factors. Each side was to focus on the factors. Father moved to another county and seeks primary custody in that county to include a new school district and new school. This would have a substantial impact on Mother's ability to be involved in child's home and school life without any consideration to the feasibility of preserving Mother's relationship. At the second pretrial conference Father was advised the specific factors the court wanted to focus upon based on the earlier testimony, which was a second bite at the apple in some respects for Father. Father was unable to offer testimony that would justify a move as being in the best interest of their child, so he attacks the factors as not being applicable.

*Opioids.* It was clear at the initial custody trial that Father had concerns about Mother and her inamorato's potential drug abuse and health, which were addressed in the Parenting Plan of August 2, 2016, when it provided for chemical testing that would offer proof needed to substantiate any and all claims. Also provided for in the Parenting Plan was the avenue of recourse upon chemical testing, which formed the basis of the court's reconsideration and determination that an extraordinary circumstance had occurred that warranted further proceedings. Father initially attempted to force the court into believing there was an emergency before his compliance with Parenting Plan, which ultimately had the intend impact.[2]

---

[2] It was learned at the subsequent proceeding that the emergency allegation complained of by Father resulted in a summary disorderly conduct conviction. See docket MJ-12204-NT-0000362-2016.

Unfortunately, this opioid affliction is not the first opioid custody case that has been heard by this court in 2016. The nature of Cumberland County requires the jurists to be generalists, assigned all types of criminal and civil cases. In our criminal role, every Tuesday we hear anew the toll opioids, more specifically heroin, takes on our citizens – criminal addicts and victims. The same is true in dependency and juvenile courts. Families have been ripped apart by the death of a child to heroin and divorce has ensued, in cases where the father forgives the girlfriend deliverer of heroin to his son, but the mother cannot so forgive. There is no doubt that opioids are a plague within our system of justice. This does not mean that anyone on opioids is an unqualified parent as Father would have this court knee jerk react.

Mother has an opioid addiction that has been factored into this custody decision. Mother is under professional treatment by a physician who acknowledges the nature of her dependency and is working to reduce her reliance on opioids. The shared custody puts Mother under consistent scrutiny and the Parenting Plan gives Father an opportunity to test her compliance, to which the court has already shown it will react. Father was given an opportunity to show that he could promote Mother during the exigent period of temporary custody. Father's restrictive actions were noted from the testimony and contributed to the current Plan.

*Testimony.* Some testimony is more objectively verifiable that includes some types of expert testimony that does not rely on anything like a scientific method, and has to be evaluated by comparison within the particular area of expertise. Such was the instant case and it is how all the witnesses' perceptions and opinions were evaluated. Indeed, the best use of these experts would have been to promote the family in non-court related tasks.

*Limitations.* A trial court is allowed wide discretion to exercise control over the conduct of counsel, provided the court does not abuse or arbitrarily exercise its discretion. The experts were given special unallocated time to provide their testimony, even though the reports could have been easily stipulated to and reviewed in advance of trial. Time allocation was done at the pretrial conference, which was intended to be fair to all parties. It is a choice to have counsel know the allocated time so that they and their clients may prepare for the proceeding, as opposed to having one parent shorted time because one side or even one witnessed monopolized the time available. When there is a need for additional time based on the circumstances as they arise at trial, additional time is found. Every case has time constraints, formally imposed or by laws of nature, for both the courts and the parties, and it is far better to know the constraints in advance.[3] The limitation was not unreasonable and by application, additional time was granted as necessary; thus, this not an error.

*Conclusion.* Mother **and** Father have considerable room to grow as parents. Neither would be considered a model parent, nor is the custody action a test of who is the better parent. Indeed, this case exemplifies the problems with this system of custody determination. The parties come into court, lob verbal grenades at one another and the family, and then the law expects a court to put the family back together again.[4] The court does not err in focusing in on the positives within the child's life and promoting those positives. In this case, one of the positives is the child's school; one that she has been a part of for years, the one that provides her with stability, continuity and development. Father was awarded a shared percentage of custody as per his

---

[3] The alternative is to let the court try the case, which is not this former litigator's preferred method.
[4] The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. 23 Pa.C.S. §3102.

7

modification request, with the ability to modify the cycle of custody as the child needs, which could include his specifically requested 3/2/2/3 cycle, if Father and Mother can grow. Father's complaint that his is not named primary custodian falls on deaf ears, as he has not shown he is ready or capable for that responsibility, nor that a change in schools is in the best interests of their child.

By the Court,

_____
Thomas A. Placey          C.P.J.

Distribution:
Lindsay Gingrich Maclay, Esq.
Lynnore Seaton, Esq.

Copies Mailed
1/10/17
JM

8



B        B'
        Plaintiff

v.

L        Z.        ,
        Defendant

Commonwealth of Pennsylvania

County of Cumberland
IN THE COURT OF COMMON PLEAS
OF THE NINTH JUDICIAL DISTRICT

2014-02344 CIVIL TERM

IN CUSTODY

## IN RE:  PARENTING PLAN AND ASSESSMENT

### ORDER OF COURT

**AND NOW**, this 9th day of **November 2016,** following a manifest necessity continuation trial concerning the parent's physical and legal custodial responsibilities of their minor child, M    T    B        , age 8, in which a parent is seeking primary physical custody that may result in a change in residence or school district of M        , it is hereby **ORDERED AND DECREED** that, in the best interests of M        , the "Parenting Plan" shall be as follows:

**1. LEGAL CUSTODY:**

Father, B    B        , and Mother, L    Z        , shall enjoy **shared legal custody** of M        .

    a.    Parents shall have an equal right to make all major non-emergency decisions affecting M        's general well-being including, but not limited to, all decisions regarding her health, education, and religion.

    b.    Each parent shall be entitled to equal access to M        's school, medical, dental, and other important records.



2014-02344-0083 F#1144564 Fee $0.00
ORDER OF COURT

Rcpt Z104206  11/9/2016 3:44:07 PM
David D. Buell, County Prothonotary

c. As soon as practical after receipt by a party, copies of M      's school schedules, special events notifications, report cards, and similar items shall be provided to the other party. Each parent shall notify the other parent of any medical, dental, optical, and other appointments of M with health care providers, sufficiently in advance thereof, so that the other parent remain involved.

d. Each parent shall execute any and all legal authorizations so that the other parent may obtain information from M      's schools, physicians, dentists, orthodontists, counselors, psychologists, or other similar individuals or entities concerning M      's progress and welfare. Such a release or authorization shall be executed within ten (10) days of any written request by any other parent or their counsel.

e. Notwithstanding that both parents share legal custody, non-major decisions involving M      's day-to-day living shall be made by the parent then having custody, consistent with the other provisions of this Order.

f. Both parents shall maintain an active electronic mail ("email") account for the use of the other parent and school to share and convey information regarding M      's schedule, school notifications, and the like. Both parents shall review messages in the email account on a daily basis and respond to any requests within twenty-four (24) hours, if a response is requested or required. Each parent will maintain a file of true and correct copies of all electronic communication, either electronically or in paper form. The use of Cozi Calendar and Talking Parents minimally meets this

2

requirement but is used as a threshold and improvements may be made by parents as their skills develop

g. M        shall attend **Cumberland Valley School District** and is to have a school developed **Individualized Education or 504 Plan**, which parents shall sign off on and thereafter follow.

h. M·       shall attend follow-up counseling as prescribed by Dr. Love. Both parents shall participate as needed.

## 2. PHYSICAL CUSTODY:

The parents **shall share physical custody** of M        in the structured schedule as set by the herein until such time as they develop the prerequisite co-parenting skill set so as to be able to mutually agree on the best interest of M       . Mother shall have physical custody of M        subject to Father's physical custody as follows:

a. M        shall be with Mother beginning Thursday after school on 10 November 2016 through Friday after school on 18 November 2016; thereafter parents shall rotate custody on a weekly schedule and M     shall be with Father from after school Friday through the week until Mother picks up the child after school the next Friday.

b. In non-school times the exchange shall at 6 p.m. Friday with Mother delivering child to Father and Father returning the child to Mother by 8:30 Monday morning.

c. The parents shall alternate holidays as indicated in schedule A, unless otherwise agreed to by the parents in writing.

3

d.  In the school year, if there is a Monday school holiday that is not on schedule A, this school holiday shall be enjoyed by the parent then in custody unless otherwise agreed.

e.  Nightly, the custodial parent of M      shall place a phone call to a designated number of the other parent one half-hour prior to M      's scheduled bedtime. The sole purpose of this call is to allow M      to say "good night" to the non-custodial parent. If the phone call results in an answering machine pick-up, the custodial parent shall encourage M to leave a message saying good night. **THIS CALL SHALL NOT BE ON A SPEAKERPHONE AND SHALL BE BETWEEN NONCUSTODIAL PARENT AND CHILD ONLY.**

f.  The parents shall follow the major holiday schedule previously ordered unless otherwise agreed to in writing.

g.  Mother or Father shall have physical custody of M      at such other times as the parents mutually agree in writing. **This writing and any other agreement identified in this Order may be on paper or in electronic format.**

h.  Both parents are expected to use common sense in scheduling additional telephone calls to talk to M      Both parents are directed to refrain from preventing the parent who may be calling from talking to M      , or preventing M      from calling the other parent, provided that the telephone calls are not excessively frequent or too long in duration. The non-custodial parent shall have liberal phone contact with M      on a

4

reasonable basis including, but not limited to, the nightly good night phone call established by paragraph 2(e) of this Order.

i.      The parents are to take step to maximize M        's attendance in her extracurricular activities, such as soccer, without regard to custodial parent.

## 3. GENERAL RULES OF CONDUCT:

Parents, grandparents, and all extended family shall promote the natural development of M        's love and affection for her family. The parents shall promote the affections of their child toward the other parent or the other parent's extended family and shall make a conscious effort to do so. To the extent possible, the parents shall prevent third parents from alienating the child's affections from the other parent as well as the other parent's extended family.

a.      The parents shall attend co-parent counseling, at a minimum each is to complete the educational work sheets found at ProudToParent.org and thereafter, engage a qualified family development specialist, i.e. co-parent counselor as indicated below in 4(a).

b.      Emergency decisions regarding M        shall be made by the parent then having custody. However, in the event of any emergency or serious illness of M        at any time, the parent then having custody of M shall immediately communicate with the other parent by telephone or any other means practical, informing the other parent of the nature of the illness or emergency so that the other parent can become involved in the decision-making process as soon as practical.

5

c. During any period of custody, the parents shall not possess or use illegal substances or consume or be under the influence of alcoholic beverages to the point of intoxication. Any prescribed medications shall be taken only to assure therapeutic levels. The parents shall, to the extent possible, ensure that other household members and/or guests comply with this provision.

d. Each parent shall speak respectfully of the other whether it is believed the other reciprocates or not. Each parental figure shall refer to the other by the appropriate role name such as Mom, Dad, your grandmother, or other familial name of respect.

e. The parents shall refrain from encouraging M       to provide reports about the other party. **Communication should always take place directly between parents**, without using M·       or others as an intermediary or spy on the other parent. It is harmful to M       ı to be put in the role of a spy.

f. Parents shall civilly and respectfully communicate about co-parenting, legal custody issues, and changes in schedules in person or by telephone and via letters, faxes, texts, or email, whichever means is most appropriate for the matter.

g. **Both parents shall use their best efforts to** <u>**engage in joint decision-making**</u> **with respect to M**       . In the event the parents are unable to reach an agreement, they shall exchange written proposals, including appropriate explanations of their positions, after which they shall meet and

discuss their modification proposals in person, if necessary, to reach a decision in the best interest of M    . This shall be done prior to contacting their respective attorneys, mediator, conciliator, or co-parenting coordinator.

h.    Toys, clothes, and other daily use items shall not become matters of contention between the parents as these shall be treated as M    's property, not the parents', entitling the items to be taken by M    , as reasonably appropriate. For example, a child cannot take a bedroom from one house to the other but a pillow or stuffed animal is portable.

i.    Any agreement between the parties changing the terms of this Order must be in writing to be enforced by the court. This writing may be either on paper or in an electronic format.

j.    **There shall be no corporal punishment by either parent or caregiver; it is a useless tool of last resort from which there is no recovery.**

## 4. SPECIFIC CONDUCT RULES:

In addition to the general rules, in this individual case, the following additional rules are applicable:

a.    The parties shall attend further co-parent counseling at the request of either party, which the court will designate a counselor if the parties or their legal counsel cannot agree on a mutually acceptable counselor. If there is no agreement, counsel shall submit, in writing to the court, his or her client's request for a counselor together with identification of their proposed counselor along with that counselor's résumé, hourly rate, and

7

program methodology, the other side will be given an opportunity to present similar information on their counselor of choice and the court will select one of the choices for the parents to attend.

b. Either parent may request of the other parent to submit on a periodic basis to chemical testing to ascertain consumption of prohibited or illegal substances. The parent making this request shall bear all the cost of sampling and testing. The parent receiving the testing request shall submit within 24 hours to the local testing location for sampling of their blood or urine. Any results of this testing are to be shared with the other parent upon receipt and **under no circumstances are the results to be made public** but will be available to the court for an *in camera* review upon appropriate request to the court.

c. If any matter that required the choice of a professional, such as a healthcare provider, if the parties cannot agree on a health-care provider or any other service provider, the court will select one, upon a petition to designate, wherein the requesting parent will identify their choice(s) of counselor along with a résumé, methodology and rates. The non-requesting parent will be notified and shall respond to the request with their choice(s) and required information. Thereafter, the court will designate a health-care or other service provider without a hearing.

## 5. RELOCATION:

Relocation is defined as a change in residence of the child, which significantly impairs the ability of a non-relocating parent to exercise custodial rights. No

8

relocation shall occur unless every individual who has custody rights to the child consents to the proposed relocation or the court approves the proposed relocation. Both parents must follow the statutory requirements contained in 23 Pa.C.S. §5337.

## 6. ENUMERATED OFFENSES:

Neither parent has had any convictions for an enumerated offense. No other member of either household has been identified as having a conviction of an enumerated offense. The parents are reminded that a Petition to Modify this Custody Order, they will to comply with the requirements of 23 Pa.C.S. §5329.

## 7. ASSESSMENT:

In arriving at this plan, the court considered the following factors:

a) *Which parent is more likely to encourage and permit frequent and continuing contact between the child and another party?*

It appears that Mother is less flexible with changes to the standard Order while Father seeks to make changes on short notice. Mother did not allow second Father/daughter dance to occur at school. Mother is more punctual in the encouragement; however, hostility arises when running late for the custody exchanges.

b) *The present and past abuse, continued risk of harm, adequate physical safeguards, and supervision of the child. (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party*

c) *The parental duties performed by each parent on behalf of the child.*

Father keeps in touch with all M       's teachers and goes to doctor's appointment when he can; but he does not always know about them, as Mother does not always keep him informed in advance. Father takes

9

M        to and from school as needed. Mother did not take the child to the dentist as for a period of time; Father had not paid the bill. On learning this, Father immediately addressed the bill issue and had the child to the dentist. Mother is very active at school being home-in parent oversees the keeping of hygiene, prompt attendance at school. Mother is concerned that Father returns child unbathed or with shampoo still her in hair indicating that Father fails to properly promote this hygiene and prompt daughter to take remedial action. Father is more structured and Mother is more nurturing.

d) *The need for stability and continuity in the child's education, family life, and community life.*

Mother has a points rewards schedule for prompting stability of the child; her education and other aspects of her life. Does not utilize corporal punishment. Father indicates that he utilizes a structured program. Mother indicates that Father does use corporal punishment. Court notes that corporal punishment is not legally prohibited but is a last recourse that cannot be undone.

As noted in the professional testimony, M        has several diagnosis, to include ODD and ADHD. She is a young girl in flux, with moderate acting out and impulsivity issues. M        needs consistent nurturing, structure and predictability.

*The availability of extended family.*

Mother has brothers and sisters with stepsiblings in the area, which she notes; Father denies changes in the custody schedule when of the many

family events occur. The Mother's grandparents' home is located in New Cumberland. Father has immediate family in the area. His parents are retired and indicate they are always available.

e) *The child's sibling relationships.*

None.

f) *The well-reasoned preference of the child, based on the child's maturity and judgment. (4) The child's preference, taking into consideration the age and maturity of the child.*

Not applicable.

g) *The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the [child/children] from harm. (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.*

Mother references Father's short notices to changes in the schedule. Grandmother is concerned about Father's alienation of the maternal family. Father indicates that Mother does not use the talking points website as directed by the Court and is resistant to communication. Father indicates he is hesitant to respond outside of the talking points website for fear of reprisal from Mother.

h) *Which parent is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?*

M⸱ is doing well in school, which speaks of the consistent actions currently being employed. Father indicates that M struggles with structure, which she gets with him but not with Mother. Father maintains a routine that he finds is important to keep M active and the ADHD at

11

bay.  Mother notes that M          has many neighborhood friends, she plays

soccer year round and that they do school projects in the basement.

i)  *Which parent is more likely to attend to the daily physical, emotional,
developmental, educational, and special needs of the child?*

Father notes that his routine schedule keep the child active in various

things as snowboarding, dance, as well as Mother notation of the year

round soccer and school projects. .

j)  *The proximity of the residences of the parents.*

Parents live approximately twenty miles apart in separate school districts.

k)  *Each party's availability to care for the child or ability to make appropriate
child-care arrangements*

Mother has no need based on her lifestyle for childcare arrangements.

Father indicates he has a flexible work schedule and M

grandparents are always available to him, being only fifteen minutes away.

l)  *The level of conflict between the parents and the willingness and ability of
the parents to cooperate with one another. A party's effort to protect a
child from abuse by another parent is not evidence of unwillingness or
inability to cooperate with that party.*

There is a high level of conflict, which is the reason why we are all here in

an otherwise easily resolvable situation.  Mother feels Father does not

listen.  Father feels that is he does anything against what Mother has said

he will face reprisals to include loss of vacation time, inability to be flexible

in scheduling, not getting information about school issues, doctors'

appointments, and the like from Mother.

m)  *The history of drug or alcohol abuse of a parent or member of a party's
household.*

12

Father indicates that he is concerned about domestic violence in Mother's home, specifically physical acts towards Mother, inappropriate language in the home. Mother denies such concerns. Father rebuts that by saying when he first saw the move-in, he saw wounds on the boyfriend.

n) *The mental and physical condition of a parent or member of a party's household*

~~The parties are both in good and satisfactory physical condition.~~ Mother now reports that she has had chronic pain, pain that continues for at least three months or past the normal time for tissue healing,[1] for thirteen years for which she has been treating at Franklin County pain management practice since 2008 for fibromyalgia, migraines and endometriosis. Mother is currently prescribed methadone for long term pain management and oxycodone for immediate pain management as needed daily. Effects on Mother can be drowsiness, lack of clarity of thought and gastrointestinal upset. If she were to cease medication she would go through a withdrawal from these narcotics. Mother testifies that her illnesses and treatments have never limited her parenting.

Father's medical expert opined the current medication regimen was of last resort; however, that was based on current medical practice but not related back to treatment that would have begun in 2008. Further, the doctor opines this treatment does not maintain steady therapeutic levels but spikes daily via the use of oxycodone as needed, which could cause Mother euphoria.

---

[1] National Drug Court Institute, *Drug Court Practitioner Fact Sheet*, Vol XI, No. 2, page 1

o) *Any other relevant factor. (10) Any other factor affecting the best interest of the child.*

Mother sites concerns for Father's Machiavellian tendencies as he has had separate and distinct girlfriends since 2010. Father has also shown during the manifest necessity interim custody period to make unilateral decisions in contravention to paragraph 3(g) of the August 2016 Order. Neither parent complied with that Order's 1(g) requirement for a school IEP.

Father was given a great opportunity to show how he would handle primary custody in the interim period, which he used to limit and control Mother's access to M. rather than to encourage and permit frequent and continuing contact in an attempt to preserve the relationship, which reflects a pattern of conduct to thwart the relationship of the child and Mother. This does not bespeak in the best interest of M to have her relocate with Father's as her primary residence.

It was shown during the interim custody that Father was able to get M to school without incident and that she is doing well there; indeed, making improvement in spite of all the drama going on between her parents.

p) *Work schedule.*

Mother is a stay at home Mom and relies upon her parents for supplemental support. Father has no set work schedule. He works thirty-five hours a week on a generally speaking Monday through Friday, nine-to-five schedule.

14

1) *The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life.*

Father is seeking a 3-2-2 schedule, which he believes will improve the relationship between daughter and both parents and provide her with the structure he seeks to utilize in her development.

2) *The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.*

Mother states that M       , age 8, is easily influenced; that she has ADHD that causes concerns for any changes to her lifestyle that would occur should she change school district. Father promotes that he has a structured-in plan and for her chores, education and has helped her by prompting her for dressing and promotes her extracurricular activities.

3) *The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.*

The parties are twenty miles apart and there are plenty of opportunities with phone calls, video calls to be up to date with the activities regardless of school that will maintain the relationship with the child without regard to the schedule the Court determines.

6) *Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.*

Father feels strongly that the more structure M       has the better it will enhance her quality of life and opportunity to excel in school.

7) *Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.*

School is indicated to be Father's focus without interruption but recognizes that their child will need counseling.

8) *The reasons and motivation of each party for seeking or opposing the relocation.*

Mother's reason for opposing the change in school districts is simply the fact that the change it would have on M_____ and the loss of friends that she would incur by the change. Father indicates that the structure would promote long-term stability for her in the new school district and is unconcerned of his daughter's ability to make new friends.

## 8. MODIFICATION OF ORDER:

The parents are free to modify the terms of this Order, but in order to do so, the court makes it clear that both parents must be in complete agreement to any new terms, meaning that both parents must consent in writing to the new terms of the custody arrangement.

In the event that one or the other does not consent to a change, this does not mean each follows his or her own idea as to what he or she thinks should be the schedule. The reason this Order is set out in such detail is so both parents have it to refer to and to govern their relationship with M_____ and with each other in the event of a disagreement.

A copy of this Final Order of Custody shall be sent to both attorneys, who shall provide a copy to his/her client and the Principal Raymer of the Cumberland Valley School District.

16

## 9. REASONS FOR AWARD:

All parents start off on equal footing in any custody actions. The ultimate decision here is based on what is in the best interest of M⸱ in a way that maximizes her quality time with each parent. There has been no shown reason to change school districts, which would be dramatic in her young life. It is thought better to maximize the quality time with each parent given their known respective schedules. Neither parent is perfect, parents never are, but each has room for improvement in the best interest of M⸱ . Neither parent was candid with the court about Mother's health status, which caused the manifest necessity for additional testimony; however, the legal maxim of *falsus in uno, falsus in omnibus* has not been applied but it easily could have applied equally. This lack of honesty within themselves is *a* cause of their inability to co-parent, which the court, nonetheless, will mandate.

This Parenting Plan reflects the best interest of M⸱ as expressed by lay and professional witness and it maximizes the time based on availability with each parent. There are opportunities to improve the Plan if the parents each step up and focus on M⸱ ; otherwise, the Plan foundation will never grow to be the best it can for M⸱ .

By the Court,

Thomas A. Placey    C.P.J.

<u>Distribution:</u>
Lindsay Gingrich Maclay, Esq.
Lynnore Seaton, Esq.

Copies Mailed
11/9/16
Im

17

## HOLIDAYS AND SPECIAL DAYS SCHEDULE

| DAY | TIMES | EVEN YEAR | ODD YEAR |
|---|---|---|---|
| Easter 1st half | 9 am to 2 pm | Father | Mother |
| Easter 2nd half | 2 pm to 7 pm | Mother | Father |
| Memorial Day | 9 am to 7 pm | Mother | Father |
| Independence Day | 9 am to 7 pm | Father | Mother |
| Labor Day | 9 am to 7 pm | Mother | Father |
| Halloween | 5 pm to 8 pm | Father | Mother |
| Thanksgiving 1st half | 9 am to 2 pm | Mother | Father |
| Thanksgiving 2nd half | 2 pm to 7 pm | Father | Mother |
| Christmas 1st half | 6 pm 24 December to noon 25 December | Father | Mother |
| Christmas 2nd half | Noon 25 December to 9 am 26 December | Mother | Father |
| New Years | 6 pm 31 December to noon 1 January* | Mother | Father |
| Mother's Day | 9 am to 7 pm | Mother | Mother |
| Father's Day | 9 am to 7 pm | Father | Father |

*The calendar year on December 31st dictates the odd or even year determination.

A 11023-1
TCO
#3

B    B          ,
                Plaintiff

v.

L        ·Z      ,
                Defendant

𝕮𝖔𝖒𝖒𝖔𝖓𝖜𝖊𝖆𝖑𝖙𝖍 𝖔𝖋 𝕻𝖊𝖓𝖓𝖘𝖞𝖑𝖛𝖆𝖓𝖎𝖆

County of Cumberland

IN THE COURT OF COMMON PLEAS
OF THE NINTH JUDICIAL DISTRICT

2014-02344 CIVIL TERM

IN CUSTODY

## IN RE:  PARENTING PLAN AND ASSESSMENT

## ORDER OF COURT

**AND NOW**, this **2nd** day of **August 2016**, following a trial concerning the parent's physical and legal custodial responsibilities of their minor child, M      T.

B        , age 7, in which a parent is seeking primary physical custody that may result in a change in residence or school district of M      , it is hereby **ORDERED AND DECREED** that, in the best interests of M      , the "Parenting Plan" shall be as follows:

## 1. LEGAL CUSTODY:

Father, B    B        , and Mother, L      Z      , shall enjoy shared legal custody of M.

    a.    Parents shall have an equal right to make all major non-emergency decisions affecting M      's general well-being including, but not limited to, all decisions regarding her health, education, and religion.

    b.    Each parent shall be entitled to equal access to M      's school, medical, dental, and other important records.



2014-02344-0042 F#1129282 Fee:$0.00
ORDER OF COURT

Rcpt 286125  8/2/2016 9:38:32 AM
David D Buell, County Prothonotary

43

c. As soon as practical after receipt by a party, copies of M     's school schedules, special events notifications, report cards, and similar items shall be provided to the other party. Each parent shall notify the other parent of any medical, dental, optical, and other appointments of M with health care providers, sufficiently in advance thereof, so that the other parent remain involved.

d. Each parent shall execute any and all legal authorizations so that the other parent may obtain information from M     's schools, physicians, dentists, orthodontists, counselors, psychologists, or other similar individuals or entities concerning M     's progress and welfare. Such a release or authorization shall be executed within ten (10) days of any written request by any other parent or their counsel.

e. Notwithstanding that both parents share legal custody, non-major decisions involving M     's day-to-day living shall be made by the parent then having custody, consistent with the other provisions of this Order.

f. Both parents shall maintain an active electronic mail ("email") account for the use of the other parent and school to share and convey information regarding M     's schedule, school notifications, and the like. Both parents shall review messages in the email account on a daily basis and respond to any requests within twenty-four (24) hours, if a response is requested or required. Each parent will maintain a file of true and correct copies of all electronic communication, either electronically or in paper form. The use of Cozi Calendar and Talking Parents minimally meets this

2

requirement but is used as a threshold and improvements may be made by parents as their skills develop

g.　M　　　shall attend **Cumberland Valley School District** and is to have a school developed **Individualized Education Plan**, which parents shall sign off on and thereafter follow.

h.　M　　　shall attend follow-up counseling as prescribed by Dr. Love. Both parents shall participate as needed.

## 2. PHYSICAL CUSTODY:

The parents shall share physical custody of M　　　in the structured schedule as set by the herein until such time as they develop the prerequisite co-parenting skill set so as to be able to mutually agree on the best interest of M　　. Mother shall have physical custody of M　　, subject to Father's physical custody as follows:

a.　M　　shall be with Mother overnight from Monday through Thursday of each week and M　　shall be with Father overnight from Friday through Sunday, with the exchange being done on Monday morning. In the Summer 2017 each parent shall enjoy two (2) non-consecutive vacation weeks upon 30 day written notice to the other parent, unless otherwise agreed.

b.　In non-school times the exchange shall at 6 p.m. Friday with Mother delivering child to Father and Father returning the child to Mother by 8:30 Monday morning.

3

c. In the school year the exchange shall be at 6 p.m. Friday with Mother delivering child to Father and Father returning the child to school, prepared and on-time Monday morning.

d. In the school year, if there is a Monday school holiday, Father's period shall extend to Tuesday for delivery at school, prepared and on-time that morning.

e. Nightly, the custodial parent of M      ) shall place a phone call to a designated number of the other parent one half-hour prior to M      's scheduled bedtime. The sole purpose of this call is to allow M      to say "good night" to the non-custodial parent. If the phone call results in an answering machine pick-up, the custodial parent shall encourage M to leave a message saying good night.

f. The parents shall follow the major holiday schedule previously ordered unless otherwise agreed to in writing.

g. Mother or Father shall have physical custody of M      at such other times as the parents mutually agree in writing. This writing and any other agreement identified in this Order may be on paper or in electronic format.

h. Both parents are expected to use common sense in scheduling additional telephone calls to talk to M      Both parents are directed to refrain from preventing the parent who may be calling from talking to M      , or preventing M      from calling the other parent, provided that the telephone calls are not excessively frequent or too long in duration. The

4

non-custodial parent shall have liberal phone contact with M    on a reasonable basis including, but not limited to, the nightly good night phone call established by paragraph 2(e) of this Order.

   i.    The parents are to take step to maximize M    's attendance in her extracurricular activities, such as soccer, without regard to custodial parent.

## 3. GENERAL RULES OF CONDUCT:

Parents, grandparents, and all extended family shall promote the natural development of M    's love and affection for her family. The parents shall promote the affections of their child toward the other parent or the other parent's extended family and shall make a conscious effort to do so. To the extent possible, the parents shall prevent third parents from alienating the child's affections from the other parent as well as the other parent's extended family.

   a.    The parents shall attend co-parent counseling, at a minimum each is to complete the educational work sheets found at ProudToParent.org and thereafter, engage a qualified family development specialist, i.e. co-parent counselor as indicated below in 4(a).

   b.    Emergency decisions regarding M    shall be made by the parent then having custody. However, in the event of any emergency or serious illness of M    at any time, the parent then having custody of M shall immediately communicate with the other parent by telephone or any other means practical, informing the other parent of the nature of the

5

illness or emergency so that the other parent can become involved in the decision-making process as soon as practical.

c. During any period of custody, the parents shall not possess or use illegal substances or consume or be under the influence of alcoholic beverages to the point of intoxication. Any prescribed medications shall be taken only to assure therapeutic levels. The parents shall, to the extent possible, ensure that other household members and/or guests comply with this provision.

d. Each parent shall speak respectfully of the other whether it is believed the other reciprocates or not. Each parental figure shall refer to the other by the appropriate role name such as Mom, Dad, your grandmother, or other familial name of respect.

e. The parents shall refrain from encouraging M     to provide reports about the other party. **Communication should always take place directly between parents**, without using M     or others as an intermediary or spy on the other parent. It is harmful to M     to be put in the role of a spy.

f. Parents shall civilly and respectfully communicate about co-parenting, legal custody issues, and changes in schedules in person or by telephone and via letters, faxes, texts, or email, whichever means is most appropriate for the matter.

g. Both parents shall use their best efforts to engage in joint decision-making with respect to M     . In the event the parents are unable to reach an

6

agreement, they shall exchange written proposals, including appropriate explanations of their positions, after which they shall meet and discuss their modification proposals in person, if necessary, to reach a decision in the best interest of M . This shall be done prior to contacting their respective attorneys, mediator, conciliator, or co-parenting coordinator.

h. Toys, clothes, and other daily use items shall not become matters of contention between the parents as these shall be treated as M 's property, not the parents', entitling the items to be taken by M , as reasonably appropriate. For example, a child cannot take a bedroom from one house to the other but a pillow or stuffed animal is portable.

I Any agreement between the parties changing the terms of this Order must be in writing to be enforced by the court. This writing may be either on paper or in an electronic format.

## 4. SPECIFIC CONDUCT RULES:

In addition to the general rules, in this individual case, the following additional rules are applicable:

a. The parties shall attend further co-parent counseling at the request of either party, which the court will designate a counselor if the parties or their legal counsel cannot agree on a mutually acceptable counselor. If there is no agreement, counsel shall submit, in writing to the court, his or her client's request for a counselor together with identification of their proposed counselor along with that counselor's résumé, hourly rate, and program methodology, the other side will be given an opportunity to

7

present similar information on their counselor of choice and the court will select one of the choices for the parents to attend.

b. Either parent may request of the other parent to submit on a periodic basis to chemical testing to ascertain consumption of prohibited or illegal substances. The parent making this request shall bear all the cost of sampling and testing. The parent receiving the testing request shall submit within 24 hours to the local testing location for sampling of their blood or urine. Any results of this testing are to be shared with the other parent upon receipt and **under no circumstances are the results to be made public** but will be available to the court for an *in camera* review upon appropriate request to the court.

c. If any matter that required the choice of a professional, such as a healthcare provider, if the parties cannot agree on a health-care provider or any other service provider, the court will select one, upon a petition to designate, wherein the requesting parent will identify their choice(s) of counselor along with a résumé, methodology and rates. The non-requesting parent will be notified and shall respond to the request with their choice(s) and required information. Thereafter, the court will designate a health-care or other service provider without a hearing.

## 5. RELOCATION:

Relocation is defined as a change in residence of the child, which significantly impairs the ability of a non-relocating parent to exercise custodial rights. No relocation shall occur unless every individual who has custody rights to the child

8

consents to the proposed relocation or the court approves the proposed relocation. Both parents must follow the statutory requirements contained in 23 Pa.C.S. §5337.

## 6. ENUMERATED OFFENSES:

Neither parent has had any convictions for an enumerated offense. No other member of either household has been identified as having a conviction of an enumerated offense. The parents are reminded that a Petition to Modify this Custody Order, they will to comply with the requirements of 23 Pa.C.S. §5329.

## 7. ASSESSMENT:

In arriving at this plan, the court considered the following factors:

a) *Which parent is more likely to encourage and permit frequent and continuing contact between the child and another party?*

It appears that Mother is less flexible with changes to the standard Order while Father seeks to make changes on short notice. Mother did not allow second Father/daughter dance to occur at school. Mother is more punctual in the encouragement; however, hostility arises when running late for the custody exchanges.

b) *The present and past abuse, continued risk of harm, adequate physical safeguards, and supervision of the child. (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party*

c) *The parental duties performed by each parent on behalf of the child.*

Father keeps in touch with all M     's teachers and goes to doctor's appointment when he can; doesn't always know about them, as Mother does not always keep him informed in advance. Father takes M     to and from school as needed. Mother did not take the child to the dentist as

9

for a period of time; Father had not paid the bill. On learning this, Father immediately addressed the bill issue and had the child to the dentist. Mother is very active at school being home-in parent oversees the keeping of hygiene, prompt attendance at school. Mother is concerned that Father returns child unbathed or with shampoo still her in hair indicating that Father fails to properly promote this hygiene and prompt daughter to take remedial action. Father is more structured and Mother is more nurturing.

d) *The need for stability and continuity in the child's education, family life, and community life.*

Mother has a points rewards schedule for prompting stability of the child; her education and other aspects of her life. Does not utilize corporal punishment. Father indicates that he utilizes a structured program. Mother indicates that Father does use corporal punishment. Court notes that corporal punishment is not legally prohibited but is a last recourse that cannot be undone.

As noted in the professional testimony, M        has several diagnosis, to include ODD and ADHD. She is a young girl in flux, with moderate acting out and impulsivity issues. M        needs consistent nurturing, structure and predictability.

*The availability of extended family.*

Mother has brothers and sisters with stepsiblings in the area, which she notes; Father denies changes in the custody schedule when of the many family events occur. The Mother's grandparents' home is located in New

Cumberland. Father has immediate family in the area. His parents are retired and indicate they are always available.

e) *The child's sibling relationships.*

None.

f) *The well-reasoned preference of the child, based on the child's maturity and judgment. (4) The child's preference, taking into consideration the age and maturity of the child.*

Not applicable.

g) *The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the [child/children] from harm. (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.*

Mother references Father's short notices to changes in the schedule.

Grandmother is concerned about Father's alienation of the maternal

family. Father indicates that Mother does not use the talking points

website as directed by the Court and is resistant to communication.

Father indicates he is hesitant to respond outside of the talking points

website for fear of reprisal from Mother.

h) *Which parent is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?*

M ˙ is doing well in school, which speaks of the consistent actions

currently being employed. Father indicates that M struggles with

structure, which she gets with him but not with Mother. Father maintains a

routine that he finds is important to keep M active and the ADHD at

11

bay. Mother notes that M          has many neighborhood friends, she plays soccer year round and that they do school projects in the basement.

i) *Which parent is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child?*

Father notes that his routine schedule keep the child active in various things as snowboarding, dance, as well as Mother notation of the year round soccer and school projects. .

j) *The proximity of the residences of the parents.*

Parents live approximately twenty miles apart in separate school districts.

k) *Each party's availability to care for the child or ability to make appropriate child-care arrangements*

Mother has no need based on her lifestyle to need childcare arrangements. Father indicates he has a flexible work schedule and M          grandparents are always available to him, being only fifteen minutes away.

l) *The level of conflict between the parents and the willingness and ability of the parents to cooperate with one another. A party's effort to protect a child from abuse by another parent is not evidence of unwillingness or inability to cooperate with that party.*

There is a high level of conflict, which is the reason why we are all here in an otherwise easily resolvable situation. Mother feels Father does not listen. Father feels that is he does anything against what Mother has said he will face reprisals to include loss of vacation time, inability to be flexible in scheduling, not getting information about school issues, doctors' appointments, and the like from Mother.

12

m) *The history of drug or alcohol abuse of a parent or member of a party's household.*

Father indicates that he is concerned about domestic violence in Mother's home, specifically physical acts towards Mother, inappropriate language in the home. Mother denies such concerns. Father rebuts that by saying when he first saw the move-in, he saw wounds on the boyfriend.

n) *The mental and physical condition of a parent or member of a party's household*

The parties are both in good and satisfactory physical condition.

o) *Any other relevant factor. (10) Any other factor affecting the best interest of the child.*

Mother sites concerns for Father's Machiavelli's tendencies as he has had separate and distinct girlfriends since 2010.

p) *Work schedule.*

Mother is a stay at home Mom. Father has no set work schedule. He works thirty-five hours a week on a generally speaking Monday through Friday, nine-to-five schedule.

1) *The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life.*

Father is seeking a 3-2-2 schedule, which he believes will improve the relationship between daughter and both parents and provide her with the structure he seeks to utilize in her development.

2) *The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.*

13

Mother states that M( is easily influenced; that she has ADHD that causes concerns for any changes to her lifestyle that would occur should she change school district. Father promotes that he has a structured-in plan and for her chores, education and has helped her by prompting her for dressing and promotes her extracurricular activities.

3) *The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.*

The parties are twenty miles apart and there are plenty of opportunities with phone calls, video calls to be up to date with the activities regardless of school that will maintain the relationship with the child without regard to the schedule the Court determines.

6) *Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.*

Father feels strongly that the more structure M( has the better it will enhance her quality of life and opportunity to excel in school.

7) *Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.*

School is indicated to be Father's focus without interruption but recognizes that their child will need counseling.

8) *The reasons and motivation of each party for seeking or opposing the relocation.*

Mother's reason for opposing the change in school districts is simply the fact that the change it would have on M. and the loss of friends that

14

she would incur by the change. Father indicates that the structure would promote long-term stability for her in the new school district and is unconcerned of his daughter's ability to make new friends.

## 8. MODIFICATION OF ORDER:

The parents are free to modify the terms of this Order, but in order to do so; the court makes it clear that both parents must be in complete agreement to any new terms, meaning that both parents must consent in writing to the new terms of the custody arrangement.

In the event that one or the other does not consent to a change, this does not mean each follows his or her own idea as to what he or she thinks should be the schedule. The reason this Order is set out in such detail is so both parents have it to refer to and to govern their relationship with M          and with each other in the event of a disagreement.

A copy of this Final Order of Custody shall be sent to both attorneys, who shall provide a copy to his/her client and the school district.

## 9. REASONS FOR AWARD:

All parents start off on equal footing in any custody actions. The ultimate decision here is based on what is in the best interest of M         in a way that maximizes her quality time with each parent. There has been no shown reason to change school districts, which would be dramatic in her young life. It is thought better to maximize the quality time with each parent given their known respective schedules. Neither parent is perfect, parents never are, but each has room for improvement in the best interest of M:      ..

15

The Parenting Plan reflects the best interest of M     as expressed by lay and professional witness and it maximizes the time based on availability with each parent. There are opportunities to improve the Plan if the parents each step up and focus on M.    ; otherwise, the Plan foundation will never grow to be the best it can for M    .

By the Court,

Thomas A. Placey            C.P.J.

Distribution:
Lindsay Gingrich Maclay, Esq.
Lynnore Seaton, Esq.

Copies Mailed
8/2/16

16